IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THE SATANIC TEMPLE, INC.                                                    PLAINTIFF

V.                                          CASE NO. 5:22-CV-5033-TLB

LAMAR MEDIA COMPANY
LAMAR ADVANTAGE GP COMPANY, LLC and
LAMAR ADVANTAGE HOLDING COMPANY                              DEFENDANTS

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

In August 2020, The Satanic Temple unveiled a "Satanic Abortion Ritual," which it believes allows its members to claim a religious exemption from state laws that regulate abortions. Am. Compl. (Doc. 3) ¶¶ 12–13. It sought to advertise to "spread awareness" of the ritual and its alleged ability to "avert[] many state restrictions" on abortion. *Id*. at ¶ 12. It therefore "engaged a marketing firm called SeedX, Inc. to design and place billboards about [The Satanic Temple] and its abortion ritual." *Id*. at ¶ 36. SeedX contracted with Lamar Advantage GP Company, LLC ("Lamar (Indiana)") to place billboards regarding the ritual in Indiana and Arkansas. Am. Compl. Ex. 1 (Doc 3-1).

Lamar (Indiana) and its affiliates do not object to displaying billboards carrying The Satanic Temple's imagery and messaging. *Id*. at ¶ 36 (showing pictures from a prior campaign regarding corporal punishment). The Satanic Abortion Ritual designs proposed to Lamar (Indiana), however, were misleading and offensive because they suggested that participants could disregard state law. *Id*. at ¶ 65. They were, therefore, rejected by Lamar (Indiana). *Id*.

The Satanic Temple now brings claims against Lamar (Indiana), as well as its Arkansas affiliate, Lamar Advantage Holding Company, and its parent, Lamar Media Corp. ("Lamar

Media").[1]  These claims must be dismissed because this Court lacks subject matter jurisdiction and because this Court is not a proper venue for the claims.  And, even if this were not the case, the claims against Lamar (Indiana) and Lamar Media would still have to be dismissed for lack of personal jurisdiction.

## DISCUSSION

**1.     This Case Must Be Dismissed For Want Of Subject Matter Jurisdiction Because The Amount In Controversy Is Less Than $75,000.**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendants may raise the defense of lack of subject matter jurisdiction by motion.  The Satanic Temple "has the burden of establishing subject matter jurisdiction."  *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006).  The Satanic Temple seeks to invoke this Court's diversity jurisdiction and must, therefore, show by a preponderance of evidence that a fact finder could conclude that the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a); *Kopp v. Kopp*, 280 F.3d 883, 85 (8th Cir. 2002) ("The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000."); *Ringsby Truck Lines, Inc. v. Beardsley*, 331 F.2d 14, 15 (8th Cir. 1964) ("Where the amount in controversy is challenged in an appropriate manner, the burden is on the plaintiff to establish the jurisdictional amount and if this burden is not met, the complaint should be dismissed for want of jurisdiction.").  "If [this Court] determines at any time that it lacks subject matter jurisdiction, [it] must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

---

[1] Lamar Media Corp. is not listed as a party in the caption or referenced in the body of the Amended Complaint.  "Lamar Media Company" is, however, included in the caption, and the complaint also references "Lamar Media Corporation."  A summons was issued to Lamar Media Corp., and Lamar Media Corp. therefore joins in the motion to dismiss out of an abundance of caution and to the extent that it has been properly named as a party to this action.

## A.  The Satanic Temple Has Not Sufficiently Alleged Any Compensatory Damages.

The contract at issue here involved "advertising [The Satanic Temple's] abortion ritual at [eight] locations for the period beginning September 28, 2020 and ending October 24, 2020" at a total cost of $16,387.  Am. Compl. (Doc. 3) at ¶ 127.  The Satanic Temple concedes that its measure of damages should be "the sum of money (less the contract price) that it would cost to communicate the same message to the same audience."  Am. Compl. (Doc. 3) at ¶ 127.  The amended complaint, however, is devoid of any allegation that The Satanic Temple has incurred ***any*** monetary damages communicating its proposed message about "abortion on demand" and "avert[ing] state restrictions" on abortion in Arkansas or Indiana.  Nor is there any evidence to support the conclusion that the cost of doing so less the contract price could exceed $75,000.

Instead of providing any proof of expenditures to convey a message in Arkansas or Indiana, The Satanic Temple asserts that it purchased a single unrelated billboard in **Arizona** for $80,000 plus $450 per month for 18 years.  Am. Compl. (Doc. 3) at ¶ 99.  First, the cost to purchase a single billboard in Arizona has no bearing on its damages from the alleged breach of a contract for the use of eight billboards in Arkansas or Indiana for a one-month period.  A billboard in Arizona cannot "communicate the same message to the same audience" in Arkansas or Indiana.  Am. Compl. (Doc. 3) at ¶ 127.  And a purchase of a billboard is much different than leasing space on a billboard owned by someone else on a monthly basis.

Even assuming for the sake or argument that the purchase of a billboard in Arizona could support a claim for damages based on the failure to honor a contract in Arkansas and Indiana, it still does not support damages greater than $75,000.  Here, The Satanic Temple claimed it spent $80,000 to purchase the Arizona billboard plus $450 per month for eighteen (18) years.  Am. Compl. (Doc. 3) at ¶ 99.  An $80,000 purchase price spread over 18 years is $370.37 per month.

Adding the additional $450 per month alleged by Plaintiff totals $820.37 per month.  As shown in the contract attached as Exhibit 1 to Plaintiff's Amended Complaint, there was to be an upfront cost of $7,362 for printing and installing the vinyl ad copy for Arkansas and Indiana.  Am. Compl. Ex. 1 (Doc. 3-1).  There is no evidence that the cost of producing and installing ad copy would be any different for an Arizona billboard or any other billboard.  Then, the monthly rental cost for the eight proposed locations averaged about $1,128 per board.[2]  Thus, on a monthly basis (which is the only way to compare the contract price with the purchase price), the costs expended by The Satanic Temple for the billboard in Arizona is about $300 less than the average monthly lease rate in the contract.  As such, it will cost less to communicate the message on the purchased billboard than it was going to cost in the contract at issue.  The measure of damages used by The Satanic Temple in its complaint would lead to $0 in compensatory damages.

### Production/Other Services

| Department | Plant | Production Type | Misc | Service Dates | # Billing Periods | Invest Per Period | Cost |
|---|---|---|---|---|---|---|---|
| Vinyl | 286 Little Rock, AR | Printing & Installation of (4) vinyls for Arkansas | | 09/21/20 | 1 | $2,962.00 | $2,962.00 |
| Vinyl | 405 Indianapolis, IN | Printing & Installation of (4) vinyls for Indiana | | 09/21/20 | 1 | $4,400.00 | $4,400.00 |
| | | | | | | Total Production/Other Services Costs: | $7,362.00 |

### Space

# of Panels: 8                                                                                                           Billing Cycle: Every 4 weeks

| Panel # TAB ID | Market | Location | Illum | Media Type | Size | Misc | Service Dates | # Billing Periods | Invest Per Period | Cost |
|---|---|---|---|---|---|---|---|---|---|---|
| 2364 364291 | 286-NORTH LITTLE ROCK, AR | I-40 N/S 1.2 MI E/O I-440 P3-EFT | Yes | Perm Bulletin | 12' 0" x 48' 0" | | 09/28/20-10/25/20 | 1 | $925.00 | $925.00 |
| 60006 364483 | 286-JACKSONVILLE, AR | US 67/167 E/S 0.6 MI N/O I-440 JCT P1-NF | Yes | Perm Bulletin | 10' 6" x 36' 0" | | 09/28/20-10/25/20 | 1 | $800.00 | $800.00 |
| 70218 364588 | 286-LITTLE ROCK, AR | I-30 S/S 0.4 MI E/O S HAMILTON P1-EF | Yes | Perm Bulletin | 14' 0" x 48' 0" | | 09/28/20-10/25/20 | 1 | $1,500.00 | $1,500.00 |
| 1399 264319 | 405-BOONE CO, IN | I-65, 1.5 MI N/O SR 334 W/S | Yes | Perm Bulletin | 14' 0" x 48' 0" | | 09/28/20-10/25/20 | 1 | $1,500.00 | $1,500.00 |
| 1597 264481 | 405-JASPER, IN | I-65, 1.5 MI S/O SR 114 | No | Perm Bulletin | 12' 0" x 34' 0" | | 09/28/20-10/25/20 | 1 | $1,000.00 | $1,000.00 |
| 5070 14925260 | 405-MORGAN CO, IN | E/S SR 67 1/4 MI S/O SR 144 | Yes | Perm Bulletin | 10' 6" x 36' 0" | | 09/28/20-10/25/20 | 1 | $1,200.00 | $1,200.00 |
| 9003 570856 | 405-DECATUR CO, IN | I-74 1680' E/O HWY 3 | Yes | Perm Bulletin | 10' 0" x 30' 0" | | 09/28/20-10/25/20 | 1 | $600.00 | $600.00 |
| 68412 30970109 | 434-SPRINGDALE, AR | I-49 W/S, 0.30 mi S/O Wagon Wheel Rd, Springdale, AR, NB, S/F-2 | Yes | Perm Bulletin | 10' 0" x 40' 0" | | 09/28/20-10/25/20 | 1 | $1,500.00 | $1,500.00 |
| | | | | | | | | | Total Space Costs: | $9,025.00 |
| | | | | | | | | | Total Costs: | $16,387,00 |

*See*, Ex. 1 to Amended Complaint (Doc. 3-1).

---

[2] ($925 + $800 + $1500 + $1500 + $1000 + $1200 + $600 + $1500) ÷ 8 = $1,128.12

In sum, an allegation regarding the purchase of an Arizona billboard is not proof of any compensatory damages regarding a contract to be performed in Arkansas and Indiana. They do not reach the same audience. Even so, the monthly cost of purchasing the billboard in Arizona is less than the average monthly cost of leasing a billboard in Arkansas or Indiana which does not support any compensatory damages.

### B.     The Satanic Temple Has Not Alleged Attorneys' Fees Or Punitive Damages That Can Support Jurisdiction.

Nor can The Satanic Temple meet the amount-in-controversy requirement by relying on its claim for attorney's fees and punitive damages. In calculating the amount of attorney's fees that can be included in the amount-in-controversy, courts in this district routinely apply a 40% multiplier to compensatory damages. *See Basham v. Am. Nat. County Mut. Ins. Co*., 979 F.Supp. 2d 883 (W.D. Ark. 2013) (applying this multiplier and citing other cases in which it was applied); *see also Moore v. Bancorpsouth Bank*, Case No. 1:20-cv-01026, 2020 WL 3843920, at *2 (W.D. Ark. July 8, 2020) (same). Here, where compensatory damages are minimal or nonexistent, attorney's fees will not suffice to demonstrate that damages meet the amount-in-controversy requirement.

Similarly, to include punitive damages in the amount in controversy, The Satanic Temple must support the "existence of the required amount . . . by competent proof." *Larkin v. Brown*, 41 F.3d 387, 388–9 (8th Cir. 1994) (quotation omitted). "[W]hen determining the amount in controversy, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages." *Id.* at 389 (quotation omitted). The Satanic Temple must demonstrate both that the facts of the case support an award of punitive damages and that the amount of such damages is sufficient to meet the amount-in-controversy

requirement.  *See id*. (affirming dismissal based on a plaintiff's "inability to recover punitive damages on [the] facts [alleged in the complaint]").

Here, the request for punitive damages is based upon Lamar (Indiana)'s refusal to allow advertising copy to be placed on billboards (which prominently display the "Lamar" name) advocating for abortion rituals that allegedly "avert many state restrictions."  In other words, The Satanic Temple is requesting punitive damages based upon a decision not to allow ad copy to be displayed that calls for the violation of state abortion laws.  It is also clear from the Complaint that Lamar entities have run other ad copy from the The Satanic Temple in the past that prominently displayed the imagery and name of the plaintiff.  Am. Compl. ¶¶ 48 and 49.  Those ads did not, however, advocate for the violation of state abortion laws.

Arkansas Model Jury Instruction 2218 on Punitive Damages makes clear that punitive damages under Arkansas state law requires proof by clear and convincing evidence that either the defendant intentionally pursued a course of conduct for the purpose of causing injury or the defendant knew or ought to have known that its conduct would naturally and probably result in injury and that such conduct was continued with malice.  Scrutiny of the allegations made in the Complaint and the high burden of proof required leads to but one conclusion:  Punitive damages cannot be awarded based upon the allegations on the face of The Satanic Temple's amended complaint.

Also, any possible award of punitive damages will be a single-digit ratio of the compensatory damages awarded.  *See May v. Nationstar Mortg., LLC*, 852 F.3d 806, 817 (8th Cir. 2017) (explaining that "few awards exceeding a single-digit ratio of punitive to compensatory damages will satisfy due process" and noting that the court had approved ratios of 5-to-1 and 5.7-to-1 in the case of small compensatory damages awards).  There is nothing to suggest that the cost

6

of communicating The Satanic Temple's "abortion on demand" message to the same audience by a different means, minus the amount The Satanic Temple agreed to pay Lamar (Indiana) could exceed the amount-in-controversy requirement, even if The Satanic Temple received a punitive damages award.

This is particularly true given that The Satanic Temple's claim for punitive damages is based on the Arkansas Civil Rights Act. *See* Am. Compl. (Doc. 3) at ¶ 111. Half of the billboards at issue in the contract were located in Indiana. Even if the Arkansas Civil Rights Act applies to Lamar (Indiana)'s actions in Indiana related to an Arkansas billboard (which defendants do not concede), it has no conceivable bearing on any damages related to the cancellation in Indiana of a contract for billboards located in Indiana. In short, the Satanic Temple cannot establish by a preponderance of the evidence that the amount-in-controversy exceeds $75,000, and this case must be dismissed for want of subject matter jurisdiction.

**2.    Even If This Court Had Subject matter Jurisdiction (Which It Does Not), It Is Not An Appropriate Venue For This Action.**

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides for an objection to venue to be made by motion. "The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss an action where venue in that court is improper." *Fed. Trade Comm'n v. Bint Operations LLC*, Case No. 4:21-cv-00518-KGB, 2022 WL 990276, at *8 (E.D. Ark. March 31, 2022) (citing 28 U.S.C. § 1406). Where, as here, the defendants to a lawsuit are not all residents of the same state, the proper venue for a lawsuit is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situation." 28 U.S.C. § 1391. "[T]he burden of proof" may be properly placed "on the plaintiff to sustain venue." *Bint Operations*, Case No. 4:21-cv-00518-KGB, 2022 WL 990276, at *8 (E.D. Ark. March 31, 2022) (citing *Cohen v. Newsweek, Inc.*, 312

F.2d 76, 78 (8th Cir. 1963)); *Cohen*, 312 F.2d at 78 ("[T]he District Court did not err in holding that appellant had the burden of establishing facts to support his claim to venue in the District of Minnesota . . . ."); *but see, e.g., U.S. v. Orshek*, 165 F.2d 741, 742 (8th Cir. 1947) (placing the burden on the defendant who challenges venue). "[W]hen ruling on a motion to dismiss for improper venue, the court may consider matters outside the pleadings." *Campos Foods, LLC v. Lloyd's of London Syndicate*, Case No. 5:20-CV-05086, 2020 WL 6829959, at *3 (W.D. Ark. Nov. 20, 2020).

Here, all the events that allegedly gave rise to the claim took place outside of Arkansas. The Satanic Temple is a Massachusetts corporation with its principal place of business in Salem, Massachusetts.  *Id*. at ¶ 3.  The Satanic Temple "engaged a marketing firm called SeedX, Inc. to design and place billboards about [The Satanic Temple] and its abortion ritual." *Id*. at ¶ 36.  SeedX was located in Los Angeles, California.  Am. Compl. Ex. 1 (Doc. 3-1) (listing an address in Los Angeles, California for SeedX).  Jacqueline Basulto of SeedX contacted Tom Hill, an Indiana-based representative of Lamar Advantage GP Company, LLC ("Lamar Indiana"), regarding the campaign.  Mot. Ex. 1 (Doc. 10-1) at ¶ 9; Am. Compl. (Doc. 3) at ¶ 8 ("Lamar Advantage GP Company, LLC is the Indiana subsidiary of Lamar Media Corporation.") & ¶¶ 44-50 (outlining the discussions between Ms. Basulto and Mr. Hill).  This led to the execution of a contract signed electronically by Ms. Basulto, Mr. Hill, and Jason Graham (the Indiana-based General Manager of Lamar Indiana).  Am. Compl. Ex. 1 (Doc. 3-1); Mot. Ex. 1 (Doc. 10-1) at ¶ 10.  There is no suggestion that these electronic signatures did not take place in the parties' regular places of business in California and Indiana.  Indeed, the contract itself demonstrated to SeedX that it was contracting with a company in Indiana.  Compl. Ex. 1 (Doc. 3-1) (listing an Indiana address).

After The Satanic Temple finalized its advertising campaign, Ms. Basulto forwarded it to Mr. Hill.  Am. Compl. Ex. 6 (Doc. 3-6).  Mr. Hill forwarded the proposed campaign to Jason Graham, the General Manager of Lamar Indiana, who sent it to Hal Kilshaw, the Louisiana-based Executive Vice President of Governmental Relations for Lamar Advertising Company, for review. *Id*.: Am. Compl. (Doc. 3) at ¶ 65; Mot. Ex. 1 (Doc. 10-1) at ¶¶ 2-6.  Mr. Kilshaw determined that the content of the proposed designs—which were intended to "spread awareness" that members of The Satanic Temple are purportedly not subject to state laws regulating abortions—was misleading and offensive and rejected them. Am. Compl. (Doc. 3) at ¶¶ 12-13, 65.  This rejection was implemented by Mr. Hill, and the contract was eventually cancelled by Mr. Graham.  *Id*. at ¶¶ 71-72, 80.  Thus, none of the events related to the negotiation, execution, or termination of the contract between SeedX and Lamar (Indiana) took place in Arkansas.

The Satanic Temple asserts that venue lies with this Court because "[t]he advertising contract which is the subject of this cause was to be performed in Benton County, Arkansas." Am. Compl. (Doc. 3) at ¶ 3.  It is true that, "under the 'substantial contacts test,'" the place of performance may be a proper forum. . . ."  *Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1310 (8th Cir. 1990); *Izard Cty. Med. Ctr. LLC v. Computer Programs & Sys. Inc.*, No. 1:18-CV-00061 BSM, 2019 WL 10894130, at *2 (E.D. Ark. Apr. 19, 2019) ("In a contract case, the place of performance is relevant to, but not dispositive of, a venue analysis.").  Here, however, all of the events related to the negotiation, execution, and cancellation of the contract at issue took place outside of Arkansas, and the sole relationship between the dispute and this district is that, had the contract not been cancelled, some—but not all—of the billboards contemplated by the contract would have been placed in Arkansas.  It is impossible to conclude that "a substantial part of the

events or omissions giving rise to the claim occurred" within this district, and the case should be dismiss for improper venue.  28 U.S.C. § 1391.

3.    **The Claims Against Lamar Media Corp. and Lamar Advantage GP Company, LLC, Must Be Dismissed For Lack Of Personal Jurisdiction.**

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for dismissal when the forum court lacks personal jurisdiction over a defendant.  When a defendant moves to dismiss for lack of personal jurisdiction, "[t]he party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).  The plaintiff must make a prima facie showing of jurisdiction, which is tested "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto."  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004) (quotation omitted).  Here, The Satanic Temple has failed to establish that this Court has personal jurisdiction over Lamar Media Corp. or Lamar (Indiana), and the claims against these entities must be dismissed.

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause."  *Id.* at 1073 (quotation omitted).  Arkansas's long-arm statute permits courts to exercise personal jurisdiction "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution."  Ark. Code Ann. § 16-4-101(B).  This Court's inquiry, therefore, "collapses into the single question of whether exercise of personal jurisdiction comports with due process."  *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).

This Court may exercise personal jurisdiction over Lamar Media and Lamar (Indiana) only if these entities have sufficient contacts with Arkansas "such that the maintenance of the suit does

not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (same). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*.

The Supreme Court has recognized two types of personal jurisdiction: general, or "all-purpose," jurisdiction and specific, or "case-limited," jurisdiction. *Daimler,* 571 U.S. at 122. A court has general jurisdiction "to hear any and all claims against [a foreign corporation] only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id*. (quotations omitted). A court has specific jurisdiction only when a defendant's contacts with the forum state are "not only . . . continuous and systematic, but also g[i]ve rise to the liabilities sued on." *Id.* at 126 (quotation omitted). Here, this Court has neither general nor specific jurisdiction over Lamar Media and Lamar (Indiana).

### A. No General Jurisdiction Exists Here Because The Satanic Temple Alleges No Facts To Suggest That Lamar Media or Lamar (Indiana) Is At Home In Arkansas.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "This form of jurisdiction over a corporation is generally limited to its place of incorporation and/or principal place of business." *Bakov v. Consol. World Travel, Inc.*, No. 15 C

2980, 2019 WL 1294659, at *13 (N.D. Ill. Mar. 21, 2019). Here, Lamar Media is a Delaware holding company headquartered in Louisiana, and Lamar (Indiana) is a Delaware limited liability company that is headquartered in Indiana. Mot. Ex. 1 (Doc. 10-1) at ¶¶ 13-14. Neither entity owns real property or other assets in Arkansas, nor does either entity have employees or a bank account in Arkansas. *Id*. These entities are "in no sense at home" in Arkansas, and this Court lacks general jurisdiction over them. *Goodyear*, 564 U.S. at 929.

### B. No Specific Jurisdiction Exists Here Because Lamar Media and Lamar (Indiana) Lack The Minimum Contacts Necessary.

The Satanic Temple does not allege facts to establish specific jurisdiction either. Lamar Media and Lamar (Indiana) did not purposefully avail themselves of the benefits and privileges of Arkansas law, and without purposeful availment, a court cannot exercise jurisdiction over a non-resident defendant. *See Lawson v. Simmons Sporting Goods, Inc.*, 2019 Ark. 84, at *9, 569 S.W.3d at 871 (stating that purposeful availment is a threshold requirement for personal specific jurisdiction). This is fatal to The Satanic Temple's amended complaint against Lamar Media and Lamar (Indiana).

With respect to Lamar Media, the amended complaint is devoid of any allegation that Lamar Media took any action that injured The Satanic Temple. Instead, the amended complaint alleges only that employees of Lamar (Indiana) negotiated, executed, and later cancelled a contract with SeedX and that an officer of Lamar Advertising Company rejected The Satanic Temple's proposed creative. *See* Am. Compl. (Doc. 3) at ¶¶ 44-51, 65, and 68; Mot. Ex. 1 (Doc. 10-1) at ¶¶ 2, 6, 11. Indeed, Lamar Media is never even mentioned in the complaint by its correct name, instead being referred to as "Lamar Media Company" and "Lamar Media Corporation." The only purported connection between Lamar Media and the allegations in the complaint is that Lamar Media is the parent company of Lamar (Indiana) (which operates out of Indiana, not Arkansas)

12

and Lamar Advantage Holding Company (which is not alleged to have taken any of the actions that allegedly damaged The Satanic Temple). Am. Compl. (Doc. 3) at ¶ 8. This is far from sufficient to establish that Lamar Media purposefully availed itself of the benefit of doing business in Arkansas.

Nor is Lamar (Indiana) subject to specific jurisdiction in Arkansas. The amended complaint does not allege that Lamar (Indiana) conducted any activities outside of its home state of Indiana. Instead, the only connection between Arkansas and the alleged harm to The Satanic Temple is that the contract between Lamar (Indiana) and SeedX contemplated that some of the billboards provided for in the contract would be located in Arkansas.

In *Walden v. Fiore*, 571 U.S. 277, 281 (2014), however, the Supreme Court explained that the fact that a defendant's actions may cause harm in a state is not enough, on its own, to establish jurisdiction. In *Fiore*, the district dismissed the complaint for want of personal jurisdiction, noting that, even if the defendant "caused harm to [plaintiffs] in Nevada while knowing they lived in Nevada, that fact alone did not confer jurisdiction." *Id.* The Supreme Court agreed, explaining that focusing on foreseeable harm "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. That is even more the case here, where The Satanic Temple is a Massachusetts religious organization that is headquartered in Massachusetts and sustained any alleged damages outside the State of Arkansas.

In short, neither Lamar Media nor Lamar (Indiana) have sufficient contacts with Arkansas to be subject to personal jurisdiction here, and the claims against them should be dismissed.

## <u>CONCLUSION</u>

This Court lacks subject matter jurisdiction over The Satanic Temple's claims because the amount in controversy is less than $75,000. Nor is this Court a proper venue for these claims,

which arose from events that occurred outside of Arkansas.  The claims must, therefore, be dismissed. And, even if this were not the case, this Court lacks personal jurisdiction over Lamar Media and Lamar (Indiana), and the claims against these entities must be dismissed.

Respectfully Submitted,

Michael N. Shannon (Ark. Bar No. 92186)
Sarah Keith-Bolden (Ark. Bar No. 2007135)
**QUATTLEBAUM, GROOMS & TULL PLLC**
111 Center Street, Suite 1900
Little Rock, AR 72201
Phone:  501-379-1700
Fax:  501-379-1701
sbolden@qgtlaw.com

*Counsel for Lamar Media Corp.,*
*Lamar Advantage GP Company, LLC, and*
*Lamar Advantage Holding Company*