IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THE SATANIC TEMPLE, INC.                                                                                           PLAINTIFF

v.                                          CASE NO. 5:22-CV-5033-TLB

LAMAR MEDIA COMPANY
LAMAR ADVANTAGE GP COMPANY, LLC and
LAMAR ADVANTAGE HOLDING COMPANY                                                   DEFENDANTS


**JOINT RULE 26(F) REPORT**

The Satanic Temple, Inc. ("TST"), Lamar Advantage GP Company, LLC ("Lamar Indiana"), Lamar Advantage Holding Company, and Lamar Media Corp., for their Joint Rule 26(f) Report, state:

**1.      Plaintiff's Statement of the Case.**

TST (a religious corporation) contracted with Lamar (a billboard company) to emplace designs on eight strategically located billboards throughout Arkansas and Indiana. One of those billboards is in this Court's district. Prior to entering into this contract, Lamar was apprised as to who the customer would be and what the signs would advertise. Lamar's sales executive indicated to TST's marketing company that neither TST's viewpoint nor TST's message would be an issue.

That changed when Lamar's Arkansas subsidiary received notice of the contract. Sight-unseen, both of Lamar's Arkansas general managers objected to posting any designs for TST, specifically because of their objection to TST's religious viewpoint. Ultimately, Lamar canceled the contract on the assertion that the billboards were "misleading and offensive." Despite TST's best efforts to determine what, exactly, was misleading or offensive about designs so that it can cure the objection, Lamar adamantly refused to explain itself.

Since the breach, TST has reached out to 12 other billboard companies, but none of them will work with TST. Because TST cannot rent billboards, it must now buy billboards. Just one billboard cost TST $80,000 (for the structure), plus $450 in monthly rents. Insofar as TST can tell, there is only one billboard for sale in Arkansas or Indiana, and that is going for $125,000.

TST has sued for breach of contract because Lamar cannot abuse its right to review content to exit its contract obligations to install designs. Lamar is estopped from arguing that it may refuse to work with TST because of a disagreement with TST's views because Lamar's own policy is that Lamar *does not* reject copy based on a disagreement with the views presented. Alternatively, TST sued for promissory estoppel. And TST has sued for religious discrimination in contracting under the Arkansas Civil Rights Act, which provides for punitive damages. TST wants an order for specific performance, contract damages, punitive damages, a permanent injunction barring Lamar from engaging in future religious discrimination, costs, and attorney's fees.

### 2. Defendant's Statement of the Case.

TST has developed a "Satanic Abortion Ritual" and claims that its members have a religious exemption from state laws that regulate abortions. TST sought to advertise this purported exemption and retained an advertising firm, SeedX, which contracted with Lamar (Indiana) to place billboards in Indiana and Arkansas. In the contract, Lamar (Indiana) "reserve[d] the right to determine if copy and design are in good taste and within the moral standards of the individual communities in which it is to be displayed" and "reject or remove any copy either before or after installation, including immediate termination of [the] contract."

Lamar (Indiana) and its affiliates do not generally object to displaying billboards carrying TST's imagery and messaging. Other subsidiaries of Lamar Advertising Company have done so in the past, and Lamar (Indiana) anticipated copy that would include a prominent sabbatic goat

and inverted pentagram before the contract was executed. After the contract was executed, however, SeedX sent proposed billboards that stated that the Satanic Abortion Ritual "permits first trimester abortions upon demand" or "averts many state restrictions." Lamar (Indiana) rejected these designs because they were offensive and misleading and exercised its right to terminate the contract.

Under these facts, no reasonable person could conclude that Lamar (Indiana) (let alone the other named defendants) rejected TST's proposed designs "because of . . . religion," as required to support TST's claim under the Arkansas Civil Rights Act, or that Lamar (Indiana) breached a contract that explicitly allowed it to reject copy and terminate the contract. Nor could a reasonable person conclude (1) that it was unconscionable for Lamar (Indiana) to reserve the right to approve the advertisement copy that would be prominently displayed on billboards or (2) that Lamar (Indiana) should be estopped from exercising this contractual right. All of TST's claims fail as a matter of law.

**3.     Are there any Objections pursuant to Rule 26(a)(1)(C) to providing required Initial Disclosures?**

No.

**4.     Are there any Objections to the *timing* of Rule 26(a) Initial Disclosures?**

No.

**5.     Agreed Document Productions.**

Pursuant to Rule 26(a)(1)(A)(ii), each party will produce a Bates numbered copy of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use

would be solely for impeachment, including, but not limited to, all non-privileged communications regarding the proposed Satanic Abortion Ritual ad campaign referenced in the Amended Complaint.

      **6.**      **Discovery.**

    **6(a).**    **How many months are reasonably necessary to complete discovery—as measured from the date of the Case Management Hearing?**

    Eight months.

    **6(b).**    **Do the parties seek to alter (increase or decrease) the maximum number of written discovery requests allowed by the Rules? If so, please explain.**

    No.

    **6(c).**    **Do the parties seek to increase the maximum number of depositions allowed per side? If yes, please explain the necessity and state how many depositions per side are proposed**.

    No.

    **6(d).**    **Please characterize the scope and extent of electronic discovery contemplated by the parties as follows: (i) none; (ii) fairly simple and routine; or (iii) complex. If your answer is "Complex," then please complete and attach Schedule A.**

    Fairly simple and routine.

    **6(e).**    **Do you anticipate the use of Expert Witnesses at trial? If so, state proposed dates by which the parties will be in a position to provide initial and rebuttal expert disclosures pursuant Rule 26(a)(2).**

    The parties anticipate that one or more expert witnesses may testify at trial. Plaintiff will provide its Rule 26(a)(2) disclosures by September 19, 2022, and defendants will provide their

Rule 26(a)(2) disclosures by October 28, 2022. Plaintiff will provide its rebuttal Rule 26(a)(2) disclosures by December 16, 2022.

**6(f).   Do the parties presently contemplate the need for a protective order prior to the exchange of documents or information?**

The parties do not currently contemplate the need for a protective order. Should a protective order become necessary, the parties will negotiate in good faith in an attempt to provide an agreed protective order to the Court that includes the language required by this Court's Policy on Filing Protective Orders and Sealed Documents.

**7.   State the parties' best estimate as to the number of days reasonably necessary to fully try the case.**

Plaintiff believes that this case will require up to five days to be tried to a jury and three days to be tried to the Court. Defendants believe that the case can be tried to a jury in two to three days and to the Court in one to two days.

**8.   State whether 90 days—measured from the Case Management Hearing—is a sufficient amount of time to Add Parties and/or Amend Pleadings.**

Ninety days is a sufficient amount of time to add parties and amend pleadings.

**9.   Settlement Prospects.**

The parties will continue to confer regarding the possibility of settlement, but early settlement does not appear likely at this time.

**10.   Special Issues and Schedules.**

_X_   **Federal Jurisdiction is Disputed**.

___   **Action removed from state court and Plaintiff's Complaint does not specifically allege damages in excess of $75,000.00.**

      _X_    **Diversity Jurisdiction case where any party is a non-corporate entity (*i.e.* LLCs, LLPs, General Partnerships, Trusts, Estates, etc.)**.

      ___    **Original action filed in this Court based on Diversity Jurisdiction where Plaintiff has named one or more "John Doe" Defendant(s)**.

      ___    **Complaint contemplates certification of a Rule 23 Class Action and/or a Collective Action pursuant to the Fair Labor Standards Act.**

      ___    **Complaint seeks recovery for personal injuries and/or wage loss.**

      **11.**    **Have all corporate parties filed the disclosure statement contemplated by Fed. R. Civ. P. 7.1?**

All parties have filed the required disclosure statement.

Respectfully submitted on May 20, 2022,

By: Matthew A. Kezhaya, ABA # 2014161
Kezhaya Law PLC
333 N Washington Ave., # 300
Minneapolis, MN 55401
phone: (479) 431-6112
email: matt@kezhaya.law

*Counsel for The Satanic Temple, Inc.*

By: /s/ Sarah Keith-Bolden
Michael N. Shannon (Ark. Bar No. 92186)
Sarah Keith-Bolden (Ark. Bar No. 2007135)
**QUATTLEBAUM, GROOMS & TULL PLLC**
111 Center Street, Suite 1900
Little Rock, AR 72201
Phone:   501-379-1700
Fax:   501-379-1701
mshannon@qgtlaw.com
sbolden@qgtlaw.com

*Counsel for Lamar Media Corp.,*
*Lamar Advantage GP Company, LLC, and*
*Lamar Advantage Holding Company*

Schedule B

Federal Jurisdiction Disputed

**1.     The parties shall jointly and concisely state the jurisdictional issue or dispute in a non-argumentative fashion.**

The defendants dispute plaintiff's assertion that the amount in controversy exceeds $75,000.

**2.     The party raising a jurisdictional defect (resisting federal jurisdiction) shall provide a statement, not to exceed one double-spaced page, setting forth the factual and legal basis of its position.**

As more fully discussed in the brief in support of defendants' motion to dismiss, TST has not shown that the amount in controversy exceeds $75,000. TST concedes that the measure of damages is "the sum of money (less the contract price) that it would cost to communicate the same message to the same audience."  Am. Compl. (Doc. 3) at ¶ 127.   TST has not alleged, however, that it incurred *any* monetary damages communicating its proposed message in Arkansas or Indiana.   Instead, TST asserts only that it purchased a single unrelated billboard in Arizona, which has no bearing on damages for alleged breach of a contract to rent eight billboards in Arkansas and Indiana for one month. *See* Am. Compl. (Doc. 3) at ¶ 99.

And, even if the cost of purchasing a billboard in Arizona were relevant, TST alleges that it is spending $820.37 per month on the Arizona billboard.   Am Compl. (Doc. 3) at ¶ 99 (alleging a cost of $80,000 plus $450 per month for 18 years to purchase the Arizona billboard, for an average cost of $820.37 each month for 18 years).  This is approximately $300 per month less than the average cost of a billboard under the contract between Lamar (Indiana) and SeedX, and the measure of damages used by TST in its complaint would lead to $0 in compensatory damages. Ex. 1 to Am. Compl. (Doc. 3-1).  TST cannot overcome this lack of damages by relying on its

claim for attorney's fees and punitive damages, both of which (if available at all) must be reasonably related to TST's compensatory damages. *See Basham v. Am. Nat. County Mut. Ins. Co.*, 979 F.Supp. 2d 883 (W.D. Ark. 2013) (applying a 40% multiplier to compensatory damages to estimate attorney's fees to determine whether the amount-in-controversy requirement was met and citing other cases in which the same multiplier was applied); *May v. Nationstar Mortg., LLC*, 852 F.3d 806, 817 (8th Cir. 2017) (explaining that "few awards exceeding a single-digit ratio of punitive to compensatory damages will satisfy due process").

**3.   The responding party (seeking to establish federal jurisdiction) shall provide a statement, not to exceed one double-spaced page, setting forth the factual and legal basis of its position.**

TST asserts diversity jurisdiction. Undisputedly, the parties have complete diversity. The question posed by Lamar's motion is whether it can be said that it is "legally impossible" for TST to recover more than $75,000. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). As further detailed in § 1 of the brief (doc. 18), the amount in controversy is at or above $643,153.80.

The measure of damages in a contracts case is that amount of money which puts TST in the same position but for the breach. *Deck House, Inc. v. Link*, 98 Ark. App. 17, 25, 249 S.W.3d 817, 824–25 (2007). Because TST can't find a competitor, not even with Lamar's assistance, TST must buy billboards. Just one billboard–of the eight the parties contracted for–has cost TST more than $75,000. Lamar says that purchase was a net positive for TST because the billboard is cheaper than the average monthly cost of Lamar's billboards. But using an average improperly discounts the eight-fold nature of the harm (eight missing billboards as opposed to one purchased billboard). There is only one billboard for sale between in Arkansas or Indiana, and it is going for $125,000. Assuming that's the average: eight billboards, at $125,000 each, is a $1,000,000 investment.

Assuming that TST can command the same rents as Lamar, assuming that TST will never have any missed rental receipts, and even assuming that TST won't incur *any* variable costs on the enterprise, the net present value of that income stream is still over the jurisdictional threshold, at $81,164.80. Add on attorney's fees and a potential 6x punitive-to-compensatory award of $486,988.80, and this is just not a close question. The Court has subject-matter jurisdiction.

        Lamar says that the Arizona billboard is too unlike any billboard in Arkansas or Indiana. But Lamar has adduced no evidence to support the claim. Because the record does not clearly preclude using the Arizona billboard as a predicate for estimating damages, the only viable ruling is either to deny the motion or at least to order jurisdictional discovery on the amount in controversy. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003).

**Schedule D**

**Diversity jurisdiction where any party is a
non-corporate entity (*i.e.* LLCs, LLPs,
General Partnerships, Trusts, Estates, etc.)**

1.      Each Non-Corporate entity shall state or diagram the citizenship as to each of its members/partners/trustees.   Membership must be traced back to a human being or corporation.

Lamar Advantage GP Company, LLC is a wholly-owned subsidiary of Lamar Central Outdoor, LLC.  Lamar Central Outdoor, LLC, is a wholly-owned subsidiary of Lamar Media Corp., a Delaware Corporation with its principal place of business in Louisiana.