IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**THE SATANIC TEMPLE, INC.**                                                **PLAINTIFF**

**V.**                    **CASE NO. 5:22-CV-5033-TLB**

**LAMAR MEDIA COMPANY**
**LAMAR ADVANTAGE GP COMPANY, LLC and**
**LAMAR ADVANTAGE HOLDING COMPANY**                    **DEFENDANTS**

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

The contract between The Satanic Temple ("TST") and Lamar (Indiana) contemplated placing TST advertising on eight billboards for 27 days at a total cost of $16,387. Am. Compl. (Doc. 3) at ¶ 127. TST nonetheless asserts that the damages at issue from the alleged breach of this contract are over $600,000. It also asserts that this district is a proper venue for its claims and that this Court has personal jurisdiction over Lamar Media Corp. and Lamar Advantage GP Company, LLC ("Lamar (Indiana)"). None of these arguments have merit, and TST's claims should be dismissed for lack of subject matter jurisdiction, improper venue, and lack of personal jurisdiction over Lamar Media Corp. and Lamar (Indiana).

## DISCUSSION

**1.**      **This Court Does Not Have Diversity Jurisdiction Over TST's Claims Because The Amount-In-Controversy Requirement Is Not Met.**

     **A.**      **Overview of Relief Requested by TST**

A brief overview of the claims made and damages requested in TST's Amended Complaint is helpful. First, TST's Count I is under the Arkansas Civil Rights Act and seeks an injunction "from further violations" and a recovery of "compensatory and punitive damages". Am. Compl. (Doc. 3) at ¶ 111. Count II is for breach of contract and seeks "specific performance" or "[a]lternatively, … the sum of money (less the contract price) that it could cost to communicate

the same message to the same audience". *Id*. at ¶ 127. The third count seeks a declaration that a portion of the contract at issue is unconscionable. Count III does not seek any relief other than that necessary for it to prevail on its breach of contract claim in Count II. Finally, Count IV sounds in promissory estoppel and seeks "specific performance." *Id.* at 137.

As shown below, TST's claim for damages is vastly disproportionate to the value of the contract at issue. Indeed, it is so unreasonable that the Court should reject it outright. If TST's claims had any merit substantively, the appropriate remedy is undoubtedly an order requiring specific performance of the contract through the placement of the advertising. Rather than focus on specific performance and the value of the right to place advertising on billboards owned by one or more of the defendants, TST concocts a scheme based on the value of "purchasing" eight (8) billboards that are not actually available for purchase. TST's analysis is not grounded in reality and is unreasonable as a matter of law.

      **B.**    **TST Has Not Adequately Alleged Compensatory Damages That Exceed The Amount-In-Controversy Requirement.**

          **i.**    **TST Ignores Its Claim For Specific Performance And Requests Damages Based On An Impossible Scenario.**

In arguing that the amount-in-controversy requirement is met, TST ignores its request for specific performance and asserts that it is impossible to rent billboard space in Arkansas from anyone other than Lamar Advantage Holding Company. *See* Resp. (Doc. 18) at pp. 5–6.[1] Because of this, it argues, its damages cannot be measured as the difference between the price of advertising

---

[1] The premise that Lamar holds a monopoly on billboards in Arkansas is demonstrably false. Lamar faces competition from many billboard companies include Lindmark Outdoor Media, Carter Outdoor Advertising, Vision Billboards, Ozark Poster Advertising Company, RAM Outdoor, Seiz Sign Company, etc.

with another company and the price contemplated by the contract between TST and Lamar (Indiana). *See id*. Instead, TST argues, the defendants should pay for TST to go into the billboard business for itself by purchasing eight billboards. *Id*. at pp. 7–12. This purported measure of damages is undermined, however, by TST's affirmative assertion that there are no billboards available for purchase in Arkansas and only one billboard available for purchase in Indiana. *Id*. at p. 7. Thus, TST seeks to have it both ways by asking this Court to disregard both specific performance and/or the fair rental value of a billboard, yet consider the hypothetical cost to purchase eight billboards, even though billboards are unavailable to purchase.

TST invites this Court to "[a]ssum[e]"—contrary to TST's affirmative assertions—that it could purchase four billboards in Arkansas and four billboards in Indiana at a total cost of $1,000,000. *Id*. at p. 9. Under TST's hypothetical scenario, it would display its "abortion on demand" message on the billboards for one month (the time period contemplated in the contract with Lamar (Indiana)), then rent out the billboard to other advertisers in perpetuity. *See id*. at pp. 8–10. The proper measure of damages, TST argues, is the $1,000,000 cost of the hypothetical billboards minus the present value of the future income stream that would be generated by the billboards.[2] *Id.*

In making this argument, TST concedes that the cost of the billboard it purchased in Arizona has no bearing on its damages in this case. *Id*. at pp. 12–13. However, this is the only

---

[2] Under TST's calculation, purchasing and owning these hypothetical billboards will generate a loss. Although disputing this aspect of TST's calculation is not necessary to support defendants' motion to dismiss, defendants dispute that owning and leasing billboards is a loss-generating endeavor.

allegation in the amended complaint that purportedly supports any actual outlay of funds by TST. TST argues that in a "facial attack" on jurisdiction, "the Court restricts itself to the face of the pleadings." *Id*. at 4.  Its argument in favor of jurisdiction, however, relies heavily on a theoretical calculation based on an impossible scenario that is not based on any factual allegations in the Amended Complaint.

In *Osborne v. U.S.*, the case cited by TST, the Eighth Circuit explained that, in a facial attack, "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." 918 F.2d 724, 729 n.6 (8th Cir. 1990).  To survive a motion to dismiss under Rule 12(b)(6), a complaint "must include sufficient factual information to provide the 'grounds' on which the claim rests." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Applying this standard to allegations regarding the amount in controversy, one district court has explained that "[i]n order to pass muster under *Twombly* and [*Aschcroft v. Iqbal*, 556 U.S. 662 (2009)], the jurisdictional allegations must provide more than labels and conclusions, and a formulaic recitation . . . will not do. . . . [T]he complaint must contain enough facts to nudge the existence of jurisdiction across the line from conceivable to plausible." *Penrod v. K&N Eng'g, Inc.,* No. 18CV02907 (ECT/LIB), 2019 WL 1958652, at *3 (D. Minn. May 2, 2019) (quotations omitted); *see also Hewitt v. Gerber Products Co.*, No. 2:12-CV-02152, 2012 WL 5410753, at *8 (W.D. Ark. Nov. 6, 2012) (remanding a removed case where the notice of removal "contain[ed] conclusory allegations that the amount in controversy exceed[ed] [the required threshold], but provide[d] no underlying factual basis for this assertion"); *CCL Industries, Inc. v. Laser Band, LLC*, Case No. 4:15-cv-1431-JAR, 2016 WL 2866432, at *4 (E.D. Mo. May 17, 2016) (dismissing a case because "the pleadings [did] not

provide the Court with a factual basis for the cursory conclusion that the amount in controversy exceeds $75,000") (quotation omitted).

TST's failure to allege facts to support its hypothetical damages calculation is not an accidental omission in its pleading: TST affirmatively asserts that a basic fact underlying its calculation, the availability of eight billboards for purchase in Arkansas and Indiana at a cost of $125,000 each, is not true. Resp. (Doc. 18) at p. 7. Under either Arkansas or Indiana law "damages must not be left to speculation and conjecture." *Arloe Designs, LLC v. Ark. Capital Corp.*, 2014 Ark. 21, at 7, 431 S.W.3d 277, 281; *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 368 (Ind. Ct. App. 2008) ("A damage award must be supported by probative evidence and cannot be based on speculation, conjecture, or surmise."). Here, though, TST seeks to go far beyond speculation and conjecture by supporting diversity jurisdiction based on a hypothetical damages calculation that contradicts the facts TST alleges to be true, not to mention the $16,387 contract price.

If defendants were to argue that TST was required to pay $1,000,000 to mitigate its damages on a $16,387 contract, we can rest assured that TST would claim such an outlay of funds was unreasonable. Conversely, it is equally unreasonable to allow TST to base a damage calculation on the same premise.

    ii. **The Value Of A Claim For Specific Performance Of A $16,387 Contract Is The Appropriate Inquiry For Jurisdictional Purposes.**

The most appropriate remedy for the claims set forth by TST, assuming they had merit, is specific performance of the contract at issue. This should be the focus for the Court's jurisdictional inquiry rather than the theoretical and outlandishly disproportionate damage theory set forth by TST in its response brief. *See Taylor v. Eagle Ridge Developers, LLC*, 71 Ark. App. 309, 314, 29 S.W.3d 767, 770 (Ark. App. 2000) ("Where land or any estate or interest in land is the subject of

5

an agreement, the right to specific performance is absolute."); Ark. Code Ann. § 16-123-107 (providing for an action "to enjoin further violations" of the Arkansas Civil Rights Act); Restatement (Second) of Contracts § 360 (1981) (explaining that, "in determining whether the remedy in damages would be adequate," one factor that is significant is "the difficulty of procuring a suitable substitute performance by means of money awarded as damages); *Stainbrook v. Low*, 842 N.E. 2d 386 (Ind. Ct. App. 2006) (sustaining award of specific performance of a contract involving land).

If, as TST alleges, the defendants have a monopoly on available billboards in Arkansas and Indiana, the proper measure of damages is not the hypothetical cost of purchasing billboards that are not, in fact, available. Instead, the amount in controversy is "measured by the value of the object of the litigation" which is the value of being able to pay Lamar $16,387 to place advertising on eight billboards. *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). "In a suit demanding specific performance of a real estate contract, the amount in controversy is established by the value of the property." *Medallion Homes Gulf Coast, Inc. v. Gevorgyan*, No. 8:07-cv-246-T-23TBM, 2007 WL 947895, at *1 (M.D. Fla. Mar. 27, 2007) (quotation omitted). "While absolute certainty is neither attainable nor required, the value of [equitable] relief must be sufficiently measurable and certain to satisfy the amount-in-controversy requirement." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (quotation omitted).

Here, TST has not alleged facts to support that its requested equitable relief meets the amount-in-controversy requirement. On the contrary, the value of specific performance cannot exceed the fair market value of the advertising contemplated by the contract, which was $16,387, far less than the amount necessary to trigger diversity jurisdiction. *See Cleveland Hous. Renewal*

*Project*, 621 F.3d at 560 (using the "value of the object of the litigation" to measure the value of specific performance). Further, there are no facts alleged to support placing a value on the ability to pay the defendants $16,387 to place advertising on defendants' billboards.

### iii. Summary

In sum, the Court should reject TST's attempt to turn this action regarding a $16,387 contract into a claim for damages at or above $643,159.60. Resp. (Doc. 18), pp. 2–12. TST's theory ignores the value of specific performance of the contract at issue and substitutes a claim for damages based on a theoretical and admittedly impossible scenario. TST has not pleaded facts to support the conclusions that the value of its right to place advertising on eight different billboards exceeds the necessary amount in controversy.

### B. TST's Lack Of Damages Cannot Be Overcome By Its Claim For Attorneys' Fees And Punitive Damages.

As explained above, this case relates to a contract to rent eight billboards for a total cost of $16,387. TST nonetheless asserts that a reasonable attorney's fee award may exceed $75,000 and that it may be entitled to punitive damages of nearly $500,000. Resp. (Doc. 18) at pp. 14, 17. TST has, however, failed to plead facts that could support an award of attorney's fees and punitive damages at all, let alone an award sufficient to trigger federal jurisdiction.

### i. Indiana Law Applies To Plaintiff's Claims.

When conducting a choice-of-law analysis regarding contractual claims, Arkansas courts weigh five factors to determine which state has the most significant relationship to the issue at hand: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; [and] (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Crisler v. Unum Ins. Co. of Am.*, 366 Ark. 130, 133, 233 S.W.3d 658, 660 (2006) (citing the Restatement (Second)

Conflict of Laws § 188 (1971)). The same factors apply to determining whether the Arkansas Civil Rights Act applies to TST's claims. *See Loftin v. United Parcel Service, Inc.*, Case No. 4:07-cv-564, 2009 WL 33048, at * 10 (E.D. Ark. Jan. 5, 2009) (applying contractual choice of law rules to determine whether the Arkansas Civil Rights Act applied to allegedly wrongful conduct that "sounded exclusively in contract"). Here, these factors indicate that Indiana, not Arkansas, law applies to TST's claims.

TST is a Massachusetts corporation with its principal place of business in Salem, Massachusetts. Am. Compl. (Doc. 3-1) at ¶ 3. TST engaged a marketing firm called SeedX, Inc. "to design and place billboards about [The Satanic Temple] and its abortion ritual." *Id*. at ¶ 36. SeedX was not located in Arkansas. Am. Compl. Ex. 1 (Doc. 3-1) (listing an address in Los Angeles, California for SeedX). Jacqueline Basulto of SeedX contacted Tom Hill, an Indiana-based representative of Lamar (Indiana), regarding the campaign. Mot. Ex. 1 (Doc. 10-1) at ¶ 9; Am. Compl. (Doc. 3) at ¶¶ 44–50 (outlining the discussions between Ms. Basulto and Mr. Hill). This led to the execution of a contract signed electronically by Ms. Basulto, Mr. Hill, and Jason Graham (an Indiana-based General Manager of Lamar (Indiana). Am. Compl. Ex. 1 (Doc. 3-1); Mot. Ex. 1 (Doc. 10-1) at ¶ 10. There is no suggestion that these electronic signatures did not take place in the parties' regular places of business in California and Indiana. Indeed, the contract itself demonstrated to SeedX that it was contracting with a company in Indiana. Compl. Ex. 1 (Doc. 3-1) (listing an Indiana address).

Thus, the only connection between Arkansas and the subject contract is that half of the billboards contemplated by the contract were in Arkansas. Unlike Arkansas, Indiana is also the place where Lamar (Indiana) received the signed contract from SeedX and the place where Lamar (Indiana) took all actions with respect to negotiating, executing, and later rescinding the contract.

There can be no question that Indiana, not Arkansas, has the most significant relationship with the contract between Lamar (Indiana) and SeedX, and Indiana law applies to TST's claims.

    ii.  **TST Is Not Entitled To An Award Of Attorneys' Fees Or Punitive Damages.**

TST asserts that it is entitled to an award of attorneys' fees based on it breach of contract claim and that its Arkansas Civil Rights Act claim supports an award of both attorneys' fees and punitive damages. Indiana law does not, however, permit an award of fees on a claim of breach of contract unless a contractual provision calls for the payment of fees. *See Saint Joseph's Coll. v. Morrison, Inc.*, 158 Ind. App. 272, 278, 302 N.E.2d 865, 869 (1973) (explaining that a judgment for damages for breach of contract "would not support the awarding of attorney's fees"). Nor can the Arkansas Civil Rights Act support an award of attorneys' fees or punitive damages on a claim to which Indiana, not Arkansas, law applies.

In arguing that the Arkansas Civil Rights Act applies—even to claims related to billboards located in Indiana—TST asserts that there was a "conspiracy" between the defendants that made Lamar (Indiana) liable for Arkansas Civil Rights Act violations. Even if TST had pleaded the existence of a conspiracy (which it did not), it is not clear what bearing this would have on whether the Arkansas Civil Rights Act can apply to an Indiana contract. TST's claims do not support an award of attorney's fees or punitive damages at all, let alone attorney's fees and punitive damages that far exceed the value of this case, and TST's claim for attorneys' fees and punitive damages cannot support federal diversity jurisdiction.

    iii.  **Even If TST Could Show That Arkansas Law Applies (Which It Cannot), Its Allegations Do Not Support An Attorneys' Fees Or Punitive Damages Award That Triggers Federal Jurisdiction.**

In asserting that it may be entitled to an attorneys' fee award sufficient to trigger federal jurisdiction, TST asserts that it is entitled to an attorneys' fee award based on an hourly rate and

9

the total number of hours its counsel spends on this case, regardless of how disproportionate that may be to the value of the case. Resp. (Doc. 18) at p. 15. But, even if Arkansas law applied (which it does not) and TST could potentially recover attorneys' fees, the attorney's fee award would still have to be reasonable. *See* Ark. Code Ann. § 16-22-308 (authorizing, a "reasonable attorney's fee" to the prevailing party in a breach of contract case); Ark. Code Ann. § 16-123-107 (authorizing a "reasonable attorney's fee" for violation of the Arkansas Civil Rights Act). Arkansas courts routinely apply a 40% multiplier to estimate a reasonable attorneys' fee award for jurisdictional purposes. *See* Defs.' Br. (Doc. 11) at p. 5. As noted above, the total value of the contract between Lamar (Indiana) was for $16,387. Of that amount, only $7,687 related to billboards in Arkansas. Am. Compl. Ex. 1 (Doc. 3-1). A reasonable attorneys' fee for purposes of analyzing the amount in controversy, therefore, no more than $3,075. TST has not alleged any facts that suggest this Court could award "reasonable" attorneys' fees that would be sufficient to trigger federal jurisdiction. After all, even if TST could recover fees on an hourly basis without considering whether the fees are proportional to the value of the case, a large portion of any fees incurred will relate to the activities of Lamar (Indiana) that took place in Indiana and related to billboards in Indiana.

TST's argument that a punitive damages award could trigger federal jurisdiction is similarly flawed. Even if TST were correct that it could be entitled to punitive damages of six times the value of its claims, the award would be only $46,122.[3] Together with attorneys' fees of 40% the value of the Arkansas portion of the contract, the total value of TST's claims would be only $65,584. Thus, even if Arkansas law could apply to a portion of TST's claims (which it does not), this Court would still lack subject matter jurisdiction.

---

[3] $7,687 (value of Arkansas performance) x 6 = $46,122

**2.      This Court Is Not A Proper Forum For TST's Claims.**

TST argues that venue is proper in this Court because all the defendants are residents of this state and because a substantial part of the events and omissions that gave rise to TST's claim occurred here.  The first argument fails because, as discussed below, Lamar Media Corp. and Lamar (Indiana) are not subject to personal jurisdiction in Arkansas with respect to this lawsuit.  The second argument fails because all the events related to the negotiation, execution, and cancellation of the contract at issue in this lawsuit took place outside of Arkansas.

In arguing that a substantial part of the events and omissions that gave rise to its claims occurred in Arkansas, TST notes that one of eight billboards contemplated by the contract was located within this district.  As noted in the brief in support of defendants' motion to dismiss, this is relevant to, but not dispositive of, the venue analysis.  *Izard Cty. Med. Ctr. LLC v. Computer Programs & Sys. Inc.*, No. 1:18-CV-00061 BSM, 2019 WL 10894130, at *2 (E.D. Ark. Apr. 19, 2019) (unreported).

In deciding whether venue is proper, this Court's focus "must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state."  *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014).  Here, as explained above, all the defendants' allegedly wrongful actions in rejecting TST's proposed designs and later cancelling the contract occurred in Indiana or Louisiana.  *See* Defs.' Br. (Doc. 11), pp. 8–9.  In an attempt to overcome this fact, TST cites to "internal grumblings" by employees of Lamar Advantage Holding Company.  Resp. (Doc. 18) at p. 33–34.  But TST concedes that these "grumblings" related to a completely different billboard design—one which Lamar had posted for TST in the past.  *See* Am. Compl. Ex. 5 (Doc. 3-5) (forwarding TST's "past campaign with Lamar" to Hal Kilshaw, Vice President of Governmental Relations for Lamar Advertising Company).  Whatever the feelings of

certain employees, TST never sought to post the design in question, nor did any defendant reject it. Indeed, the rest of the email exchange in question (which TST omitted from the complaint) demonstrates that, when an employee asked if the design could be rejected, Mr. Kilshaw explained that he had approved the content—which prominently featured TST's name and horned-goat and inverted pentagram imagery. *See* Ex. 1 ("I approved the copy on 9/8."); Am. Compl. (Doc. 3) at ¶ 48–49 (showing previously approved designs); *Campos Foods, LLC v. Lloyd's of London Syndicate*, Case No. 5:20-CV-05086, 2020 WL 6829959, at *3 (W.D. Ark. Nov. 20, 2020) ("[W]hen ruling on a motion to dismiss for improper venue, the court may consider matters outside the pleadings.")

In short, the "internal grumblings" cited by TST were not a substantial part of the events that gave rise to TST's claim, and this district is not a proper venue under 28 U.S.C. § 1391(a)(2). Moreover, as discussed below, Lamar Media Corp. and Lamar (Indiana) are not subject to personal jurisdiction in Arkansas with respect to TST's claims and are therefore not residents of Arkansas under the federal venue statute. *See* 28 U.S.C. § 1391(b)(1), (c)(2). TST's claims must, therefore, be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3).

**3.   The Claims Against Lamar Media Corp. And Lamar (Indiana), Must Be Dismissed For Lack Of Personal Jurisdiction.**

TST argues that Lamar (Indiana) is subject to personal jurisdiction in Arkansas solely because the contract between Lamar (Indiana) and SeedX included billboards in Arkansas. Resp. (Doc. 18), p. 27. It is true that a defendant may create personal jurisdiction in a state by "entering a contractual relationship that envision[s] continuing and wide-reaching contacts in the forum State." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (quotation omitted). But that is not what we have here. Lamar (Indiana) only negotiated and executed (in Indiana) a contract that included billboards within its own service in Indiana and the service area of its Arkansas affiliate. Lamar

(Indiana) did not avail itself of the privileges and benefits of Arkansas law by entering into the contract with SeedX, and it is not subject to personal jurisdiction in Arkansas. This is particularly true given that TST is a resident of Massachusetts, not Arkansas, and most of the relevant witnesses and documents are located elsewhere. *See Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (explaining that the forum-state's interest in providing a forum for its residents and the convenience to the parties of litigating in the forum are relevant factors when analyzing personal jurisdiction).

The lack of jurisdiction is even starker with respect to Lamar Media Corp., which is not alleged to have taken any action whatsoever that gave rise to TST's claims. Arguing otherwise, TST apparently relies on Hal Kilshaw's determination that TST's proposed billboard designs were misleading and offensive. But Mr. Kilshaw is the Executive Vice President of Governmental Relations for Lamar Advertising Company, not Lamar Media Corp., and his actions cannot create jurisdiction over Lamar Media Corp. in Arkansas. *See* Kilshaw Aff. (Doc. 10-1) at ¶ 2. Lamar Media Corp.'s only connection with the activities outlined in the complaint is that it is an indirect parent of Lamar (Indiana) and a direct subsidiary of Lamar Advertising Company. TST makes no argument that this alone is sufficient to create personal jurisdiction over Lamar Media Corp. in Arkansas, and the claims against it must be dismissed.

## CONCLUSION

For these reasons and the reasons stated in the defendants' motion to dismiss and brief in support, this case should be dismissed for lack of subject matter jurisdiction and improper venue. In the alternative, if the entire case is not dismissed, the claims against Lamar Media Corp. and Lamar Advantage GP Company, LLC, should be dismissed for lack of personal jurisdiction.

Respectfully Submitted,

/s/ Sarah Keith-Bolden
Michael N. Shannon (Ark. Bar No. 92186)
Sarah Keith-Bolden (Ark. Bar No. 2007135)
**QUATTLEBAUM, GROOMS & TULL PLLC**
111 Center Street, Suite 1900
Little Rock, AR 72201
Phone: 501-379-1700
Fax: 501-379-1701
mshannon@qgtlaw.com
sbolden@qgtlaw.com

*Counsel for Lamar Media Corp.,*
*Lamar Advantage GP Company, LLC, and*
*Lamar Advantage Holding Company*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 23, 2022, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ Sarah Keith-Bolden