IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**THE SATANIC TEMPLE, INC.**                                                   **PLAINTIFF**

**V.**                                  **CASE NO. 5:22-CV-5033-TLB**

**LAMAR MEDIA COMPANY**
**LAMAR ADVANTAGE GP COMPANY, LLC and**
**LAMAR ADVANTAGE HOLDING COMPANY**                    **DEFENDANTS**

**SURREPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS[1]**

The touchstone of a choice-of-law analysis for both contract and tort claims is determining which state "has the most significant relationship to the issue at hand." *Crisler v. Unum Ins. Co. of Am.*, 366 Ark. 130, 133, 233 S.W.3d 658, 660 (2006) ("In conflict-of-law disputes for causes of action arising in contract, this court applies the law of the state with the most significant relationship to the issue at hand."); *see Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 842 (8th Cir. 2017) (explaining, in a tort case, "[a]s we understand current Arkansas law, the . . . court considers first which State has the most significant relationship to the action and the parties. . . ."). Here, all activities that gave rise to TST's claims took place outside of Arkansas. TST is incorporated and headquartered in Massachusetts. Am. Compl. (Doc. 3-1) at ¶ 3. It hired SeedX, a marketing firm with no alleged connection to Arkansas, to procure billboard space. *See* Am. Compl. Ex. 1 (Doc. 3-1) (listing California address for SeedX); Surreply (Doc. 27) at p. 15 (suggesting that SeedX's agent was in New York). SeedX contracted with Lamar Advantage GP Company, LLC ("Lamar Indiana"), a Delaware LLC, for the billboard space. Mot.

---

[1] At the hearing on June 14, this Court authorized the defendants to file a reply addressing choice-of-law.

Ex. 1 (Doc. 10-1) at ¶ 14.  Tom Hill, who negotiated and signed the contract for Lamar Indiana, and Jason Graham, who signed the contract as Lamar Indiana's General Manager, were both based in Indiana.  *Id*. at ¶¶ 9–10.

All the activities that gave rise to the alleged breach of contract and discrimination also took place outside of Arkansas.  After finalizing the proposed copy, SeedX sent it to Mr. Hill (Indiana).  Am. Compl. Ex. 6 (Doc. 3-6).  Mr. Hill forwarded it to Mr. Graham (Indiana), who sent it to Hal Kilshaw (Louisiana).  Am. Compl. (Doc. 3) at ¶ 65; Mot. Ex. 1 (Doc. 10-1) at ¶¶ 2–6.  Mr. Kilshaw (Louisiana) determined that the copy was misleading and offensive and rejected it.  Am. Compl. (Doc. 3) at ¶¶ 12–13, 65.  Mr. Hill (Indiana) conveyed this to SeedX, and Mr. Graham (Indiana) eventually cancelled the contract.  *Id*. at ¶¶ 71–72, 80.  There is no reasonable dispute that Indiana has the most significant relationship to this dispute, and Indiana law applies.

**1.      The Choice Of Law Impacts Attorneys' Fees As Well As Punitive Damages.**

TST notes that the choice of law is important to determining whether TST can include potential punitive damages to establish the amount in controversy.  This is true.  Determining which state's law applies is also important, however, because it determines whether TST can include attorneys' fees to determine the amount in controversy.

In the absence of a claim under the Arkansas Civil Rights Act ("ACRA"), TST's only remaining claim is for breach of contract.  Indiana law does not permit an award of attorneys' fees in a breach of contract claim.  *See Saint Joseph's Coll. v. Morrison, Inc.*, 158 Ind. App. 272, 278, 302 N.E.2d 865, 869 (1973) (explaining that a judgment for damages for breach of contract "would not support the awarding of attorney's fees").  Thus, the only award potentially available to TST is one for compensatory damages based on the alleged breach of contract.  As explained in the

defendants' prior briefing, TST has not alleged any facts to support the conclusion that an award of compensatory damages could conceivably exceed the amount-in-controversy requirement.

**2.      TST's Claims Sound In Contract.**

TST does not take a clear position on whether its claim sounds in contract, tort, or property law.  It asserts at one point that "[t]he ACRA claim primarily raises a tort issue."  Surreply (Doc. 27) at p. 5.  It does not, however, unequivocally assert that its claims do not sound in contract, instead saying only that its "ACRA claim does not sound in contract, or at least not for the reason Lamar argues."  *Id*.  Then TST asserts that its "ACRA claim, to some extent, raises a property issue."  *Id*.  Still, the gist of TST's argument seems to be that tort-law principles apply.

In arguing that this Court should apply conflicts-of-law principles for tort claims, TST argues, without explanation, that the "ACRA claim sounds in tort because TST complains of religious discrimination" and that a party "may also incur tort liability" by breaching a contract. *Id*. at p. 6.  TST does not, however, explain what tort is allegedly involved.  At any rate, TST alleges the defendants discriminated against it by breaching a contract, not through a tort such as negligence.  Thus, like the wrongful discharge claim in *Loftin v. United Parcel Service, Inc.*, TST's claim "sound[s] exclusively in contract," and contractual choice-of-law principles apply.  Case No. 4:07-cv-564, 2009 WL 33048, at *10 (E.D. Ark. Jan. 5, 2009) (applying contractual choice of law rules to determine whether the ACRA applied to allegedly wrongful conduct that "sounded exclusively in contract").

**3.      Contractual Choice-Of-Law Principles Point To Indiana Law.**

When conducting a choice-of-law analysis regarding contractual claims, Arkansas courts weigh five factors to determine which state has the most significant relationship to the issue at hand: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; [and] (5) the domicile,

3

residence, nationality, place of incorporation and place of business of the parties." *See Crisler*, 366 Ark. at 133, 233 S.W.3d at 660; Resp. (Doc. 23) at pp. 7–8 (explaining how these factors apply here). As explained above and in the defendants' reply brief, all these factors indicate that Indiana, not Arkansas, has the most significant relationship to TST's claims. Reply (Doc. 23) at pp. 7–8.

Asserting otherwise, TST relies almost exclusively on the purported subject matter of the contract, asserting that this case is about "the community standards of Little Rock and Springdale (both in Arkansas)." Surreply (Doc. 27) at p. 5. Because of this, TST argues, the subject matter of the contract was also in Arkansas. *Id*. at pp. 16–7. The basis of this assertion is not clear, since, to the extent that community standards are at issue, both Arkansas and Indiana standards are relevant. At any rate, the subject matter of the contract was not moral standards in Indiana or Arkansas. It was the right to display advertising copy on eight billboards. *See Smith v. Unitemp Dry Kilns, Inc.*, 16 Ark. App. 160, 162, 698 S.W.2d 313, 314 (1985) (explaining that the subject matter of a contract for design services included the designs to be provided and the money paid for the designs). The mere fact that community standards in Arkansas may come into play does not change the fact that Indiana, not Arkansas, has the most significant relationship to the contract.

**4.     Even If TST's Claim Sounded In Tort, Indiana Law Would Still Apply.**

Even if, moreover, TST were correct in that its ACRA claim sounds in tort, Indiana law would still apply. As with claims involving a contract, a court examining a tort claim "considers first which State has the most significant relationship to the action and the parties." *Shelby*, 855 F.3d at 842. Here, Indiana is the state (1) where the contract was negotiated and signed by Lamar Indiana, (2) where half the billboards at issue were located, (3) where TST's proposed designs were formally rejected, and (4) where the contract was cancelled by Lamar Indiana. *See* Am. Compl. Ex. 6 (Doc. 3-6); Mot. Ex. 1 (Doc. 10-1). Arkansas, on the other hand, is only the place

where the remaining four billboards were located.  Am. Compl. Ex. 6 (Doc. 3-6).  There is no reasonable question regarding which state has a more significant relationship to TST's claims.

In response, TST argues that the tort that gave rise to its claim occurred in Arkansas because "the impetus for [the defendant's] conduct arose out of Arkansas."  Surreply (Doc. 27) at p. 7.  In doing so, TST ignores the undisputed fact that Hal Kilshaw, a Louisiana-based vice president of a Delaware company that is headquartered in Louisiana, was responsible for deciding whether to accept TST's proposed copy.  Am. Compl. Ex. 6 (Doc. 3-6).  When Mr. Kilshaw determined that the proposed "abortion on demand" copy was misleading and offensive, Indiana-based employees of Lamar Indiana were responsible for implementing the rejection and, eventually, cancelling the contract.  *Id.*; Am. Compl. (Doc. 3) at ¶ 65; Mot. Ex. 1 (Doc. 10-1) at ¶¶ 2–6.  None of these actions or decisions took place in Arkansas.

TST argues that, even though the relevant activities took place in Indiana and Louisiana, "Lamar-Arkansas started the chain of events in Arkansas" when an Arkansas-based manager asked Mr. Kilshaw if completely different copy used by TST in prior campaigns could be rejected.  Surreply (Doc. 27) at p. 7.  TST fails to mention, however, that Mr. Kilshaw responded that he had already reviewed and approved the copy in question.  *See* Reply Ex. 1 (Doc. 23-1).  None of TST's alleged damages here relate to that previous design.  The mere fact that someone in Arkansas expressed reservations about different copy not at issue here falls far short of establishing that Arkansas has a more significant relationship to the action and parties than does Indiana.

After determining which state has the most significant relationship to the action and the parties, a court may turn to the five Leflar factors: "(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law."  *Shelby*, 855 F.3d at

842. These factors, too, point to Indiana law. The predictability of results is furthered by the reasonable expectation that, when people are conducting business in Indiana, they are covered by Indiana law. Likewise, interstate order is advanced, and the judiciary's task is simplified, when Indiana business activities are subject to Indiana law.

As to the fourth factor, the forum state's interest, Arkansas does not have a significant interest in protecting a Massachusetts corporation from alleged discrimination in Indiana. This is particularly true because Arkansas law is not better than that of Indiana. Both states have civil rights acts. *See* Ark. Code Ann. § 16-123-101 *et seq.*; Ind. Code § 22-9-1-1 *et seq.* TST may prefer to make a claim for damages, including punitive damages, under the ACRA than an administrative claim for damages under the Indiana Civil Rights Act. Arkansas, however, has no interest in providing a forum for an out-of-state plaintiff to obtain punitive damages on a claim that arose in another state. Thus, the Leflar factors, too, show that Indiana, not Arkansas, law applies even if TST's claims arose in tort.

**5.      The Situs Rule Does Not Apply To TST's Claims.**

TST notes that under the "situs rule," Arkansas law "applies to question concerning title to land" in Arkansas. Surreply (Doc. 27) at p. 18. Therefore, it notes "[l]eases are subject to the law of the situs ***as to the nature of the rights created in land***." *Id.* (quoting 2 Arkansas Civil Prac. & Proc. § 6:8 (5th ed.)) (emphasis added). But this dispute does not concern the nature of rights in land, and there is no need to turn to Arkansas law to determine, for example, whether the contract created a valid leasehold interest in real estate. Instead, this dispute relates to whether an alleged breach of contract constituted religious discrimination against TST. The mere fact that a contract has some connection to real estate is not sufficient to apply the law of the situs to claims, like those at issue here, that sound in breach of contract. *See Ark. Valley Electric Coop. Corp. v. S.W. Bell Telephone Co.*, Case No. 2:16-CV-02139, 2017 WL 3314008, at *4 (W.D. Ark. Apr. 17, 2017)

(analyzing choice-of-law principles related to "an agreement pertaining to the joint use of . . . utility poles" and explaining that the "case primarily involves claims that sound in contract, though [the] conversion claim sounds in tort and [the] unlawful detainer claim relates to real property").

## CONCLUSION

The allegations in the complaint and the exhibits presented in the briefing make it clear that Indiana, not Arkansas, has the most significant connection to this dispute. Under Indiana law, TST cannot recover either attorney's fees or punitive damages. For this reason, along with the other reasons outlined in the defendants' brief and reply, TST has failed to allege facts to support the conclusion that the amount-in-controversy requirement for diversity jurisdiction has been met. TST's claim must be dismissed for lack of jurisdiction.

    Respectfully Submitted,

    Michael N. Shannon (Ark. Bar No. 92186)
    Sarah Keith-Bolden (Ark. Bar No. 2007135)
    **QUATTLEBAUM, GROOMS & TULL PLLC**
    111 Center Street, Suite 1900
    Little Rock, AR 72201
    Phone: 501-379-1700
    Fax: 501-379-1701
    mshannon@qgtlaw.com
    sbolden@qgtlaw.com

    *Counsel for Lamar Media Corp.,*
    *Lamar Advantage GP Company, LLC, and*
    *Lamar Advantage Holding Company*