# 5:22-CV-5033

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

The Satanic Temple, Inc.
*Plaintiff*

*v.*

Lamar Advantage GP Company, LLC;
Lamar Advantage Holding Company; and
Lamar Advertising Company

*Defendants.*

## TST'S FACTS BEYOND A GENUINE DISPUTE



**Matt Kezhaya**                    **matt@crown.law**
Ark. # 2014161              direct: (479) 431-6112
Minn. # 0402193            general: (612) 276-2216

100 S. Fifth St., Ste 1900, Minneapolis, MN 55402

**COMES NOW** TST, by and through counsel, with a statement of the material facts as to which there is no genuine dispute to be tried.

1.      TST engaged SeedX, a California based marketing agency to identify and help secure the subject billboards. Appx. 124 (Affidavit of Jacqueline Basulto), at ¶ 2.

2.      SeedX selected Lamar Advertising because of its large presence in Arkansas and Indiana, its reputation for a willingness to post controversial copy, and because Lamar had posted billboards for TST before. Appx. 125 (Id.), at ¶ 4

3.      SeedX reached out to Defendant on August 22 to inquire about leasing the billboard spaces TST wanted. Appx. 12 (Email from Arif Asheem to knott@lamar.com *Billboard Inquiry, Indiana* (Aug.22, 2020, 4:50 p.m. EDT)).

4.      The Arkansas billboards were owned by Lamar-Arkansas, and Tom Hill was not an employee of Lamar-Arkansas. However, an employee of Lamar-Arkansas worked with Tom Hill to effectuate the deal, and Lamar account executives have authority to

sell any Lamar billboard space. Appx. 111 (Depo. Gibbens), at 7:11-
14.

5.     On September 2, 2020 at 1:00 pm Eastern time, Jacqueline
Basulto (of SeedX) had a telephone conference with Tom Hill
(account executive of Lamar-Indiana). During this telephone
conference, Jacqueline Basulto informed Tom Hill that the subject
copy "will be pro-reproductive rights in nature and related to the
religious practices of the Satanic Temple." Appx. 125 (Aff. Basulto),
at ¶ 5. She also informed him that Lamar had worked with TST *in
the past.* Appx. 33 (email from Basulto to Hill *re: Lamar Advertising*
dated Sept. 2, 2020 at 10:58 pm Eastern).

6.     Tom Hill confirmed under oath that the September 2
telephone conversation took place, swore he could not recall the
details of the conversation. Appx. 104-108 (Depo. Hill) at 6:16-8:5,
10:25-11:6, 14:14-15, and 29:8-13. Hill has no materials that would
refresh his recollection as to the details of the conversation. Appx.
104 (id.), at 8:6-8:18.

7.    On September 9, 2020, Hill emailed Basulto that he was sending a contract for her to sign. Appx. 14 (Email from Hill to Basulto *Re: Proposal for SeedX* Sep. 9, 2020, 3:13 pm EDT).

8.    Basulto expressed concern that the artwork would not be ready by then and asked whether she should send samples for approval before signing the contract. Appx. 14 (Email from Basulto to Hill, *re: id.*, at 3:37 pm).

9.    Hill responded that the copy she had sent previously was approved. Appx 14 (Hill to Basulto, *id.*, at 3:38 pm). The copy Basulto sent previously was for TST's past campaign, which Basulto had expressly stated in her previous email to Hill. Appx. 33 ("I am also attaching our *past* campaign with Lamar to show you what creative looked like in the *past*") (emphasis added).

10.   By September 11, 2020, Basulto had still not signed the contract. Appx. 15 (Email from Hill to Basulto, *re: id.*, Sept. 11 at 6:38 am). Hill asked Basulto to sign the contract. Id.

11.   Basulto responded that she had "no problem signing," but she

was still waiting for the advertising copy from TST. Appx. 15 (email from Basulto to Hill, *re: id.*, Sept. 11, at 11:59 am).

12.    On September 14, Basulto signed the contract Lamar sent her. Appx. 18. The next day, a Lamar general manager executed the contract. *Id.* This contract is consistent with any other fully executed contract from another market. Appx. 111 (Depo. Gibbens), 7:3-10.

13.    Paragraph 5 of the Contract includes a condition whereby Lamar reserves the right to determine whether advertising copy is "in good taste and within the moral standards of the community." Appx. 19. The same paragraph allows Lamar to terminate the contract if it determines the advertising copy does not meet those standards. Id. The contract contains no other provisions allowing for termination. Id.

14.    Lamar's stated policy provides:

> Lamar Advertising supports the First Amendment rights of advertisers who want to use our medium to convey political, editorial, public service, and other noncommercial messages. Per policy, we

do not accept or reject copy based on our
agreement or disagreement with the views
expressed.

Appx. 130 (Lamar Advertising Copy Acceptance Policy) (Revised
as of July 2016). This policy was applicable at the time. Appx. 115
(Depo. Kilshaw), at 6:7-9. Its application requires Lamar to post
Satanic messages on equal terms as Christian messages. Appx. 23
("We run thousands of church ads and have to post the occasional
atheist, satanic, et. submissions we receive.")

15.    Upon complete execution of the contract, Tom Gibbens
(General Manager over Lamar-Arkansas) sent an internal email to
Hal Kilshaw. Appx. 23 (Email from Gibbens to Kilshaw, *re: Lamar
Advertising* Sep. 15, 2020, 9:38 am Eastern). There, Gibbens states
that he has not seen the proposed ad copy but still asks for
permission to unilaterally cancel the contract, sight-unseen. *Id.* ("I
do not have the final artwork yet. Can we reject this based on not
meeting the moral standards of our community?")

16.    Three minutes later, SeedX sent the proposed advertising

copy to Lamar. Appx. 22 (Email from Basulto to Hill, *Re: Lamar Advertising* Sept. 15, 2020, 9:41 am Eastern).

17.    A little more than an hour later, Kilshaw emailed Jason Graham, (General Manager for Lamar-Indiana), "All of these are misleading and offensive so no on all of them." Appx. 24 (Email from Kilshaw to Graham *Re: Satanic Temple Creative* Sept. 15, 2020, 10:58 am Eastern).

18.    Kilshaw's basis for asserting that the proposed designs were "misleading" was rooted in the errant proposition of law that the Satanic Abortion Ritual "is criminal or suggests violating law." Appx. 116 (Depo. Kilshaw), at 17:21-18:2; see also id., at 41:1-3 ("I wouldn't have approved anything that implied or stated that it was okay to break the law in following the abortion ritual.")

19.    Kilshaw is not a First Amendment lawyer. Appx. 115 (id.), at 6:15-16. Kilshaw is not a lawyer at all. Id., at 6:17-18. Kilshaw is not familiar with the Arkansas, Indiana, or Federal Religious Freedom Restoration Acts. Appx. 116 (id.), at 18:10-16. Nor is

Kilshaw familiar with the legal significance of *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). Appx. 120 (id.), at 33:22-34:15.

20.    As support for the proposition that the designs were "misleading," Kilshaw volunteered his misimpression of the law that peyote was not "allowed by law," despite it being "part of the practice of religion[]." Appx. 120 (id.), at 32:15-17; but see, *e.g.*, 21 CFR § 1307.31; 42 USC § 1996a(b)(1).

21.    Six days later, Lamar informed TST and SeedX that Lamar rejected TST's proposed ad copy. Appx. 31 (Email from Hill to Basulto*, re: Lamar Advertising,* Sept. 21, 2020, 10:33 am Eastern).

22.    The next day, Hill asked whether SeedX would send new copy. Appx. 31 (Email from Hill to Basulto*, re: Lamar Advertising,* Sept. 22, 2020, 9:16 am Eastern).

23.    In response, Basulto asked what was wrong with the proposed copy. Appx. 31 (Email from Basulto to Hill, *re: id.*, Sept. 22 at 11:54 am Eastern).

24.    Hill told her that Lamar said it was misleading and offensive.

Appx. 31 (Email from Hill to Basulto, *re: id,* Sept. 22, 2020, 11:57 am Eastern).

25.    Basulto asked for clarification as to what specifically the content was misleading and offensive. Appx. 31 (Email from Basulto to Hill, *re: id.*, Sept. 22, at 11:59 am Eastern).

26.    Hill simply responded "All of the content." Appx. 31 (Email from Hill to Basulto, *re: id,* Sept. 22, 2020, at 12:01 pm Eastern).

27.    Basulto responded explaining that they cannot revise the designs without knowing the specific problems with the proposed copy. Appx. 31 (Email from Basulto to Hill, *re: id.*, Sept. 22, at 12:05 pm Eastern). Basulto further iterated that the proposed advertising copy was consistent with TST's religious beliefs and practices. Id.

28.    Hill responded that he would see if he could get more details. Appx. 31 (Email from Hill to Basulto, *re: id,* Sept. 22, 2020, at 12:12 pm Eastern).

29.    On September 22, at 12:12 pm Eastern Time, Hill requested that Kilshaw provide the specific information necessary for TST to

revise the designs. Appx. 28 (Email from Hill to Kilshaw *Re: Satanic Temple Creative* Sept. 22, 2020, 12:12 pm Eastern). Kilshaw never responded.

30.    The next day, at 5:59 pm Eastern, TST sent Hill a demand letter and preservation notice that they could either provide feedback on TST's proposed advertising copy or TST would sue for breach of contract. Appx. 42 (email from Kezhaya to Hill, *re: TST v. Lamar Advertising Company -- demand letter and preservation notice*, Sept. 23 at 5:59 pm Eastern); Appx. 43 (the demand letter).

31.    Lamar never informed TST or SeedX any specific problems with the proposed copy or what TST or SeedX could do to remedy the alleged problems. This was inconsistent with how Lamar treated rejected Christian messaging. Appx. 3 (providing specific information as to why the copy was rejected in a pro-life design); Appx. 6 (same). It is also inconsistent with the normal course of conduct in the advertising business. Appx. 126 (Aff. Basulto), ¶ 8.

32.    The Indiana RFRA has been interpreted to exempt various

religious plaintiffs from abortion restrictions. Appx. 61 (Indiana RFRA order). The text of Arkansas RFRA is substantively identical to the text of Indiana RFRA. Appx. 117 (Depo. Kilshaw), 22:25-23:7; *compare* ACA § 16-123-401 *with* IC § 34-13-9-8.

Respectfully submitted on March 3, 2023 by:



| | |
|---|---|
| **Matt Kezhaya** | **matt@crown.law** |
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0402193 | general: (612) 276-2216 |

100 S. Fifth St., Ste. 1900, Minneapolis, MN 55402

### CERTIFICATE OF SERVICE

NOTICE IS GIVEN that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on March 3, 2023, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*