# 5:22-CV-5033

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

The Satanic Temple, Inc.
*Plaintiff*

*v.*

Lamar Advantage GP Company, LLC;
Lamar Advantage Holding Company; and
Lamar Advertising Company

*Defendants.*

## BRIEF IN SUPPORT OF TST'S MOTION FOR PARTIAL SUMMARY JUDGMENT



**Matt Kezhaya**
Ark. # 2014161
Minn. # 0402193

matt@crown.law
direct: (479) 431-6112
general: (612) 276-2216

100 S. Fifth St., Ste 1900, Minneapolis, MN 55402

## SUMMARY

Lamar breached the contract by failing to perform its contract obligation to emplace ads on the specified billboards for the specified dates. Lamar's assertion that its obligations were purely discretionary cannot be credited without rendering the entire contract unenforceable as predicated on an illusory promise. The only way to read this contract as enforceable is to interpret Lamar's right to assess the copy as one that must be discharged in good faith. Lamar did not assess the copy in good faith; instead, it refused to give TST any particularized feedback to allow TST to cure the objection.

Lamar is also liable under the ACRA. Whereas Lamar stonewalled TST's advertising, Lamar happily posts "thousands" of church ads. Combine this with Lamar-Arkansas's contemporaneous objection to TST as an advertiser. Add in the statement that "All of the content" – religious viewpoint and iconography included – was "misleading and offensive." Taken together, this mixture removes any genuine dispute of fact as to whether Lamar treated TST differently from a similarly situated non-Satanic group.

The question of damages is the subject of a genuine dispute. Lamar did not provide the billing data, as ordered, until 1:57 pm on the deadline of this motion. Because the necessary information was not timely made available to perform a damages calculation, a trial on damages is unavoidable. The question of damages, however, does not preclude a liability judgment as to breach of contract because damages are not an element of breach of contract.

ARGUMENT

## Legal standard

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FRCP 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been

satisfied: "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristar Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). "A fact is material only when its resolution affects the outcome of the case." *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252. The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record

that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## 1: Defendants breached the contract.

The Court should grant TST summary judgment on the breach of contract claim. A breach of contract action involves four elements: (1) the parties entered into a contract; (2) the contract required the defendant to perform or not to perform a certain act; (3) plaintiff did what was required of it (or plaintiff's performance was excused); and (4) the defendant did not do what was required of it. AMI Civ. 2401 (cited with approval at *Jones v. John B. Dozier Land Tr.*, 2017 Ark. App. 23). Each element is discussed in turn.

### 1.1: The parties had a valid contract; TST may enforce it.

There is no genuine dispute that the parties had a valid contract. See Appx. 18 (the contract; fully executed on September 15, 2020).

A valid contract exists where there is manifest intent by both parties to bind themselves, and that contract will be enforced as long as no rule of law is violated. CJS *Contracts* § 78. Because the authorized signatories signed the "contract," Appx. 111 (Depo. Thomas Gibbens Feb. 1, 2023 6:22-25, 7:1-2) a binding and enforceable agreement existed between Lamar and TST.

Defendants' answer suggests that TST cannot sue on the contract. See Doc. 31 at ¶15 and ¶ 112. Defendants are wrong. An agent, acting within authority, and which contracts for a disclosed principal, has created a contract between the principal and the third party. *Downer v. Goodwin*, 15 F.2d 807, 808 (8th Cir. 1926); *see also Rest. 3d Agency* § 6.01. TST hired SeedX to secure billboard advertising for its proposed advertising campaign. Appx. 124 (Affidavit of Jacqueline Basulto), at ¶ 2. Through a phone call between Basulto and Tom Hill (account executive at Lamar-Indiana), SeedX disclosed that it was acting on behalf of TST. *Id* at 125; see also Appx. 18 (Advertiser: "THE SATANIC TEMPLE"). Because SeedX created a contract for a disclosed principal, the contract was by and between

TST and Lamar-Indiana (Indiana locations), Lamar-Arkansas (Arkansas locations), and Lamar-HQ (as to all locations). The Court should overrule Lamar's objection that TST is not the proper plaintiff.

### 1.2: The contract required Lamar to post the designs.

The contract between Lamar and TST requires Lamar to "display in good and workmanlike manner, and to maintain for the terms set forth" TST's billboards. Appx. 18 at p. 1.

Under Lamar's proffered construction of the agreement, its "obligation" to emplace the contracted-for designs lies purely at the option of Lamar. This interpretation cannot be given any credence without upending the contract entirely. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 120 (2000) ("if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form a consideration for the promise of the other party.")

Because Lamar's interpretation of the contract would render the

contract unenforceable as illusory, the Court should find that Lamar could only justifiably refuse to perform upon a good faith determination and a reasonable opportunity to cure. *See Sutton v. Sutton*, 28 Ark. App. 165, 167 (1989) ("In construing a contract, if there are two constructions, each of which is reasonable, one of which will make the contract enforceable, and the other which will make it unenforceable, the court will prefer the construction which will make it enforceable.")

### *1.3: TST provided the designs, per the agreement.*

TST performed as contracted. The contract requires that all ad copy must be provided to Lamar ten days prior to the initial Service Date. Appx. 19 (Contract at p. 2). At Hill's direction, Basulto executed the contract before providing Lamar the proposed ad copy. Appx. 15. Because Lamar prompted TST to enter into the contract without ever seeing the subject designs, the designs were not "material" to Lamar's contract obligation to post the designs. Cf. Black's Law Dictionary, MATERIAL (11th ed. 2019) ("Of such a nature

that knowledge of the item would affect a person's decision-making.")

The initial service date of this contract was September 28, 2020. Appx. 18 (Contract at p. 1). Ten days earlier was September 18. Basulto complied, provided the proposed copy on Sept. 14, 2020. See Appx. 22. Thus, TST performed its obligations under the contract.

### 1.4: Lamar failed to post the contracted-for designs.

Lamar did not post the contracted-for designs. Appx. 31. The nonperformance of a contractual duty is a breach of contract. *Zufari v. Architecture Plus*, 323 Ark. 411, 420 (1996) (citing *Restatement (Second) of Contracts* § 235(2) (1981)). The sole contractual caveat to excuse Lamar's nonperformance was if it found that the designs were not "in good taste or within the moral standards of the individual communities." Appx. 19 (Contract ¶ 6). But that determination must be made in good faith. *See Ripplemeyer v. National Grape Co-op. Ass'n, Inc.* 807 F.Supp. 1439, 1450 (W.D. Ark. 1992) (recognizing

the implied warranty of good faith and fair dealing) (citing ACA §
4–1–203); *Restatement (Second) of Contracts* § 205 (1981)); *see also W.
Memphis Adolescent Residential, LLC v. Compton*, 2010 Ark. App. 450;
*Cantrell-Waind & Assocs., Inc. v. Guillaume Motorsports, Inc.*, 62 Ark.
App. 66, 71 (1998) ("When a contract term leaves a decision to the
discretion of one party, … courts will become involved when the
party making the decision is charged with bad faith.")

Lamar breached the contract because its assessment of TST's
copy was done in bad faith. *Cantrell-Waind*, above. Immediately
upon hearing of the contract, Tom Gibbens (of Lamar-Arkansas)
objected to TST as an advertiser and requested that Kilshaw give
him permission to terminate the contract, despite never having seen
the designs. Appx. 23 ("I do not have the final artwork yet.") Gib-
bens' objection was also intended for Whit Weeks (also of Lamar-
Arkansas, who managed the Northwest Arkansas territory). Appx.
23. Whit Weeks concurred, finding it "embarrassing" and "ridicu-
lous" that TST's designs would be emplaced on Lamar billboards.
Appx. 25 and 26. In an effort to preclude TST from ever having an

opportunity to post billboards in Arkansas again, Weeks instructed his salespeople to never accept ad requests from unidentified advertisers. Appx. 25.

The determination that TST's designs were "misleading and offensive" was based solely on Kilshaw's lay, and erroneous, understanding of the law. Appx. 115 (Depo. Kilshaw, at 5:12-18, 7:23-25). Kilshaw was ignorant of the Arkansas, Indiana, and Federal Religious Freedom Restoration Acts. Appx. 116 (Depo. Kilshaw. at 18:10-16). Under Kilshaw's errant understanding of the law, peyote was not "allowed by law," despite it being "part of the practice of religion[]." Appx. 119-120 (Depo. Kilshaw, at 32:15-17); *but see*, *e.g.*, 21 CFR § 1307.31 (exempting peyote from the Controlled Substances Act for religious purposes); 42 USC § 1996a(b)(1) (same). Contrary to Kilshaw's fundamental misunderstanding of the law, the Indiana RFRA has been interpreted to specifically exempt plaintiffs who do not believe that "life" begins at "conception" from Indiana's abortion restrictions. Appx. 61. The text of Arkansas RFRA is substantively identical to the text of Indiana RFRA. *Compare*

ACA § 16-123-401 *with* IC § 34-13-9-8.

Nor can Lamar straight-facedly call itself coddler supreme for the public's sensitivities. Lamar performs no polling to determine the "moral standards of the community." Appx. 112 (Depo. Tom Gibbens at 11:1-25, 12:1-25); *compare Conway Constr. Co. v. City of Puyallup*, 197 Wash. 2d 825, 834 (2021) (under the implied warranty of good faith and fair dealing, "the right to terminate exists only when … based upon reasonable grounds.") Nor does Lamar yield to threats of property destruction when someone disagrees with a particular design. Appx. 8 ("if we publicize taking down copy because of threats it could encourage more threats.") Lamar even publicly disclaims an editorial role in picking and choosing among its ads on the basis of opinion. Appx. 130 (Lamar Copy Acceptance Policy) ("Lamar will not accept or reject copy based upon agreement or disagreement with the views presented.")

Under both Lamar's policy and the implied warranty of good faith and fair dealing, Lamar had an obligation to provide TST a reasonable opportunity to cure. Appx. 130 ("Lamar pledges to …

work with advertisers to achieve acceptable copy if the originally submitted copy is not accepted"); *Ripplemeyer*, 807 F.Supp. at 1452. But Hill provided Basulto precisely zero information to cure Lamar's unspecified objection. Appx. 31 ("All of the content.") Despite multiple requests for particularized feedback so as to permit TST to "achieve acceptable copy," Hill provided no feedback. See Appx. 31 and Appx. 22. Instead, and despite Hill's specific request to Kilshaw for more specific feedback, Kilshaw simply opted to ignore TST. His stated reasoning was that he followed Lamar's legal department's instruction to "cut off all communications." Appx. 114 (Depo. Kilshaw, at 37:18-38:1).

Lamar's decision to stonewall TST's advertising efforts stands in stark contrast to Lamar's course of conduct with pro-life advertisements. See Appx. 3 and Appx. 6. Lamar happily works with Christian campaigns to modify copy as to "achieve acceptable copy." Ibid. This is part and parcel of Lamar's practice of running "thousands of church ads" but only begrudgingly running "the occasional atheist, satanic, etc. submissions." Appx. 23 ("have to").

Nor can Lamar claim surprise at the nature of the billboards. Basulto explicitly informed Hill at the outset of the contract negotiations that the billboards were to be pro-reproductive rights in nature. Appx. 125 (Aff. Basulto, ¶ 5(a)). Hill disclaimed any recollection of the subject telephone conversations. Appx. 111-Depo. Hill at 6:16-8:5 and 10:25-11:6). Hill has no materials to refresh his recollection of the conversations. Appx. 111 (Depo. Hill, at 8:6-8:18). Basulto even specified, twice, that the example billboard she was providing (which pertained to corporeal punishment, not abortion) was a *past* campaign. Appx. 13. Thus, there can be no genuine dispute whether TST informed Lamar that the subject designs were going to be about TST's abortion ritual as opposed to TST's religious objection to corporeal punishment.

Lamar's stated basis for refusing to comply with its contract obligations is textually absent from the contract. *Contrast* Appx. 19 (Contract ¶ 6 ("good taste" and "moral standards" are what Lamar needs to show to cancel the contract)) *vs.* Appx. 31 ("misleading and offensive" is what Lamar went with). Any ambiguity as to whether

"good taste" and "moral standards" is synonymous with "misleading and offensive" is ruled out by the fact that Lamar drafted the contract. *Sturgis v. Skokos*, 335 Ark. 41, 53 (1998) ("ambiguities in a contract are construed strictly against the drafter of the contract.") Lamar, as the party who drafted the contract, is expected to strictly conform itself to the text of the agreement. *Id.*

In contract law, "it is fundamental that an interpretation of a contract which results in termination of the contract is disfavored over one which affirms the existence of the contract." *Simeone v. First Bank Nat. Assn*, 971 F.2d 103, 107 (8th Cir. 1992), citing Cf. 4 Williston on Contracts at 748 ("an interpretation which renders the contract or agreement valid and its performance possible will be preferred to one which makes it void or its performance impossible or meaningless...."). "Further, an interpretation which is fair and reasonable to both parties is preferred over a harsh one." *Id.* at 751. There is nothing fair or reasonable about giving Lamar a unilateral right to reject TST's copy under these circumstances. The Court should enter a summary judgment in favor of TST as to liability on

the breach of contract claim.

### *1.5: Lamar's breach of contract caused TST damages.*

There is a genuine issue of material fact as to damages. "[T]he underlying purpose in awarding damages for breach of contract is to place the injured party in as good a position as he would have been in had the contract been performed." *Cook v. Cook*, 2010 Ark. App. 758.

Unfortunately, the information necessary to perform a damages calculation was not timely provided. On February 14, 2023, this Court ordered Defendants to produce "rental history documents or data for the billboards in question." ECF 44. Lamar did not produce the information until 1:57 pm on the date this motion was due. Appx. 122. Because the necessary information to calculate damages was not timely provided, a trial on damages is unavoidable.

However, the existence of a genuine dispute of material fact as to damages does not preclude summary judgment on liability for the breach of contract. This is because damages caused by a breach is

not an essential element of a claim for breach of contract. AMI 2442; *W. Union Telegraph Co. v. Aubrey*, 61 Ark. 613, 616, 33 S.W. 1063, 1064 (1896) ("Nominal damages may be recovered for … a breach of contract unaccompanied by any actual damage.").

Here, there can be no question that TST suffered damages. When Lamar breached the contract, TST performed a diligent search for a reasonable acceptable competitor. Appx. 126-128. (Affidavit of Jacqueline Basulto), at ¶ 9. When TST could not find a suitable alternative, TST bought a billboard in Arizona for $80,000, plus $450 per month for the next 18 years. Appx. 44-60. TST would not have incurred this expense but for the revelation that "one of the largest outdoor advertising companies in the world"[1] cannot be relied upon to post TST's advertising. TST was also deprived of the reputational value of being first to lay claim to a religious exemption from abortion restrictions through RFRA. See Appx. 61-103 (Indiana RFRA order). The valuation of these damages is within the province of the

---

[1] https://www.lamar.com/About (last visited March 3, 2023)

fact-finder.

## 2: Lamar violated the ACRA.

The Arkansas Civil Rights Act prohibits religious discrimination in private contracting. ACA § 16-123-107(a)(4). If leasing a billboard is a "property transaction," the ACRA prohibits religious discrimination there, too. ACA § 16-123-107(a)(3).

"Disproportionate impact is not irrelevant, but it is not the sole touchstone of … discrimination. Proof of "discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed. 450 (1977).

TST is a religion, recognized as such by Federal courts and by the IRS. *Satanic Temple v. City of Scottsdale*, No. CV18-00621-PHX-DGC, 2020 WL 587882 (D. Ariz. Feb. 6, 2020) (holding that TST is a bona fide religion). Kilshaw acknowledges in his email to Gibbens that Lamar has run "thousands" of ads with religious content

for churches and other organizations. Appx. 23. That was Kilshaw's response when Gibbens initially asked – before having seen TST's proposed ad copy – whether Lamar could cancel the contract for not meeting the moral standards of the community. *Id*. Lamar has run numerous "pro-life" ads. Doc 3 at ¶ 70. This shows that Lamar has no objection whatsoever to displaying religiously motivated content. The question then falls on whether Lamar applies that principle equally to all religions.

Under *Village of Arlington Heights* test, an action that has a discriminatory effect is not a violation of Equal Protection or Civil Rights protections unless that action is motivated by a discriminatory intent. Originally, Kilshaw's opinion was that since Lamar had worked with so many churches, they "have to post the occasional atheist, satanic, etc. submissions we receive." *Id*. After Hill finally informed Basulto that TST was cancelling the agreement, Basulto told Hill, in part, that the proposed ad copy contained TST's religious images and was consistent with TST's religious beliefs. Appx. 31. When she asked what specifically Lamar found objectionable,

Hill replied "All of the content." *Id.*

Gibbens' assertion that the contract should be cancelled for "moral" reasons precludes any dispute whether Lamar's cancellation was based on a discriminatory view of TST's religious beliefs. Hill's assertion that "all of the content" is offensive is a public statement of Lamar's subjective opinion of what it considers acceptable and unacceptable religious speech. Lamar's subsequent refusal to run TST's ad copy and instead cancel its contract with TST is further testament that Lamar will not post advertising with which it does not morally agree. This decision contradicts Lamar's publicly stated policy of running even ads that it disagrees with, contradicts Lamar's course of conduct with similarly situated Christian billboards, and is a clear violation of the ACRA's bar against religious discrimination in private contracting.

Lamar refused to honor the contract and display TST's advertisements because it determined that "all of the content" was offensive and misleading. Lamar provided no explanation for what was offensive. Lamar provided no legal opinion for what, if any,

statement made by TST's proposed ad copy was misleading. Instead, Lamar made a blanket objection to "all of the content." The content was replete with TST's religious beliefs and religious iconography. Combined with Lamar's long history of happily displaying advertising by mainstream religions whose message Lamar agrees with, Lamar has engaged in discriminatory actions against TST. Lamar's discriminatory actions had a discriminatory effect against TST. And because of Gibbens' desire to cancel the contract before having even seen TST's proposed ad copy, there can be no dispute that Lamar's discriminatory actions were taken with a discriminatory intent. Under the *Village of Arlington Heights* test, Lamar has engaged in religious viewpoint discrimination against TST. Lamar has provided no objective basis for its assertion that "all of the content" was offensive or misleading. For these reasons, Lamar has violated ACA § 16-123-107 and a finding of summary judgment in favor of TST and against Lamar is appropriate.

## CONCLUSION / PRAYER FOR RELIEF

WHEREFORE the Court should enter summary judgment in

favor of TST on the breach of contract and ACRA claims, and should entertain a trial on damages.

Respectfully submitted on March 3, 2023 by:



| Matt Kezhaya | matt@crown.law |
|---|---|
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0402193 | general: (612) 276-2216 |

100 S. Fifth St., Ste. 1900, Minneapolis, MN 55402

## CERTIFICATE OF SERVICE

**NOTICE IS GIVEN** that I, Matt Kezhaya, submitted for electronic filing the foregoing document by uploading it to Court's CM/ECF system on March 3, 2023. The CM/ECF system sends notification to all counsel of record. */s/ Matt Kezhaya*