IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**THE SATANIC TEMPLE, INC.**                                                               **PLAINTIFF**

**V.**                        **CASE NO. 5:22-CV-5033-TLB**

**LAMAR ADVANTAGE GP COMPANY, LLC,**
**LAMAR ADVANTAGE HOLDING COMPANY, and**
**LAMAR ADVERTISING COMPANY**                               **DEFENDANTS**

**DEFENDANTS' RESPONSE TO THE SATANIC TEMPLE, INC.'S**
**MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY**

      TST asserts that the defendants were legally required to post advertisements announcing that the Satanic Abortion Ritual "averts many state restrictions" on billboards that prominently feature the "Lamar" name. The defendants could not apply editorial to the billboards, TST argues, because they touched upon TST's religious beliefs. *See* Pl.'s Summ. J. Br. (Doc. 54) at p. 20 (arguing that Lamar should not have formed "a subjective opinion of what it considers acceptable and unacceptable religious speech" by determining that the proposed advertisements were offensive). During their depositions, however, the founders of The Satanic Temple ("TST") refused to give their own legal names and instead provided only pseudonyms. Ex. 1, Jarry Dep. at 7:1–21; Ex. 2, Greaves Dep. at 6:10–7:23. TST also refused to provide information about members involved in advertising the Satanic Abortion Ritual because "TST members are at real risk of retaliation for their involvement in TST" and the "TST co-founders regularly receive death threats." Ex. 3 at pp. 2, 7. In short, TST's founders and members are unwilling to associate their own names with advertisements for the Satanic Abortion Ritual, yet argue that the defendants were required to do so.

The defendants retained Clint Albright, who has operated an advertising agency located in Little Rock, Arkansas, for more than 31 years, to testify regarding how TST's "abortion on demand" and "averts many state restrictions" copy would have been received by the Arkansas public and the ramifications to advertisers of posting advertisements that are offensive to the surrounding community.  *See* Ex. 4 (Albright Report).  Albright's more than 30 years running an advertising agency in Arkansas make him well qualified to assist the jury in understanding these issues, and TST's motion to exclude his testimony should be denied.

**LEGAL STANDARDS REGARDING EXPERT TESTIMONY**

"The screening requirement of Rule 702 [of the Federal Rules of Evidence] has been boiled down to a three-part test:  First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  This is the basic rule of relevancy.  Second, the proposed witness must be qualified to assist the finder of fact.  Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires."  *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014) (quotation omitted).  The rule "liberalize[s] the admissibility of expert testimony," and "clearly is one of admissibility rather than exclusion."  *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (quotations omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of addressing shaky but admissible evidence."  *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation*, 9 F.4th 768, 778 (8th Cir. 2021) (quotation omitted).  "Doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility."  *U.S. v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (quotation omitted).

## DISCUSSION

**1.     Albright's Testimony Is Relevant and Therefore Useful to the Finder of Fact.**

The first requirement is that expert testimony be useful to the finder of fact.  *Johnson*, 754 F.3d at 561.  Testimony is useful to the finder of fact if it is relevant.  *Id*. at 561–62.  Although TST's brief states that Albright's testimony will not be "useful to the finder of fact," TST does not argue that the subject of Albright's testimony is not relevant to this case.  Pl.'s Br. (Doc. 51) at 3.  After all, TST asserts that the Arkansas Civil Rights Act requires the defendants to post TST's proposed billboards advertising that "the Satanic Abortion Ritual averts many state restrictions" —regardless of whether they are misleading and offensive—simply because they touched upon TST's religious beliefs.  *See* Pl.'s Summ. J. Br. (Doc. 54) at 20–21.  Albright's testimony is relevant to, among other things, the ramifications of this novel interpretation of the Arkansas Civil Rights Act for the defendants, and it will assist the jury in understanding this case.  *See* Ex. 4.

**2.     Albright's Testimony Is Grounded in Specialized Knowledge Developed over 31 Years Running an Advertising Agency.**

TST argues that Albright's testimony is not useful to the finder of fact because his experience in the advertising industry does not make him "an expert on the subject at hand."  Pl.'s Br. (Doc. 51) at 5.  In making this argument, however, TST seems to take issue with the amount of detail provided in Albright's report, rather than his expertise in the advertising industry.  *Id*. (arguing that Albright should have "objectively explained how the ads pose a risk, why people would view the ads as highly offensive, how the ads might cause a violent response, or perhaps provide examples").  This is, at most, an issue for cross-examination.  *In re Bair*, 9 F.4th at 778; *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility,

and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (quotation omitted).

At any rate, Rule 702 recognizes that a witness's qualification may be based on "experience." Fed. R. Evid. 702. Albright has run an advertising agency in Little Rock, Arkansas, for more than 31 years. Ex. 4. During that time, he has worked with accounts ranging from automotive, fine jewelry, home improvement, law firms, restaurants, retail industries, and political campaigns in a variety of advertising media, including outdoor advertising. *Id*. This experience has given him insight into the types of advertisements that are likely to be considered offensive by the public and the ramifications of posting advertising that viewers find offensive, including loss of business and potential property damage. *Id*. The testimony of a person who has more than 30 years of experience in advertising will assist the finder of fact in understanding how TST's copy would have been received by the community, and Albright is qualified to help the jury understand these issues.

3.   **Albright's Testimony Is Reliable.**

Finally, TST argues that Albright has not sufficiently articulated his methodology and that his testimony is, therefore, unreliable. Pl.'s Br. (Doc. 51) at 6. But Albright is not performing a toxicological or similar technical analysis that could raise concerns about whether a particular methodology is scientifically. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748,758 (8th Cir. 2006) (considering an expert opinion about whether a chemical exposure caused symptoms and injuries); *Kumho*, 526 U.S. at 151–53 (explaining that a Rule 702 analysis of expert testimony that relies "on skill- or experience-based observation," should be tailored to the nature of the testimony at issue). He is drawing on more than 30 years of experience in the advertising field to opine about (1) how TST's proposed advertisement would have been received by the community and (2) the

4

ramifications to the defendants of posting TST's proposed ads. Albright's report lays out the reasons for his conclusion that TST's "abortion on demand" and "averts many state restrictions" copy would have been offensive to many viewers and pose risks to the defendants. If TST takes issues with the factual basis for these conclusions, it can address this during cross examination. *First Union Nat'l Bank*, 423 F.3d at 862.

## CONCLUSION

Albright's testimony will help the jury understand the offensive nature of TST's claim that the Satanic Abortion Ritual "averts many state restrictions" and the ramifications of forcing the defendants to carry a message, regardless of content, simply because they are religious in nature. TST's motion in limine should be denied.

Respectfully Submitted,

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
mshannon@qgtlaw.com
sbolden@qgtlaw.com

By:  /s/ Sarah Keith-Bolden
     Michael N. Shannon (92168)
     Sarah Keith-Bolden (2007235)

*Attorneys for Defendants*
