IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THE SATANIC TEMPLE, INC.                                                              PLAINTIFF

V.                              CASE NO. 5:22-CV-5033-TLB

LAMAR ADVANTAGE GP COMPANY, LLC,
LAMAR ADVANTAGE HOLDING COMPANY, and
LAMAR ADVERTISING COMPANY                                                    DEFENDANTS

### DEFENDANTS' RESPONSE TO TST'S FACTS BEYOND A GENUINE DISPUTE

Defendants, for their response to TST's Statement of Facts Beyond a Genuine Dispute, state:

1. TST engaged SeedX, a California based marketing agency to identify and help secure the subject billboards. Appx. 124 (Affidavit of Jacqueline Basulto), at ¶ 2.

RESPONSE: Admitted that TST engaged SeedX to identify and help secure billboards and that the address given for SeedX on a contract between Lamar Advantage GP Company, LLC ("Lamar Indiana") and SeedX, as agent for The Satanic Temple ("TST") is in California. Denied that the affidavit cited in Paragraph 1 of TST's statement of material facts supports the conclusion that TST is a currently a California-based marketing agency.

2. SeedX selected Lamar Advertising because of its large presence in Arkansas and Indiana, its reputation for a willingness to post controversial copy, and because Lamar had posted billboards for TST before. Appx. 125 (Id.), at ¶ 4.

RESPONSE: Admitted for purposes of TST's motion for summary judgment, subject to defendants' right to cross-examine Basulto.

3.     SeedX reached out to Defendant on August 22 to inquire about leasing the billboard spaces TST wanted. Appx. 12 (Email from Arif Asheem to knott@lamar.com *Billboard Inquiry, Indiana* (Aug.22, 2020, 4:50 p.m. EDT)).

RESPONSE:  Admitted that SeedX reached out to Lamar Indiana on August 22, 2020, to inquire about leasing billboard space.

4.     The Arkansas billboards were owned by Lamar-Arkansas, and Tom Hill was not an employee of Lamar-Arkansas. However, an employee of Lamar-Arkansas worked with Tom Hill to effectuate the deal, and Lamar account executives have authority to sell any Lamar billboard space. Appx. 111 (Depo. Gibbens), at 7:11- 14.

RESPONSE:  Admitted that Tom Hill was not an employee of Lamar Arkansas and that the billboards TST sought in Arkansas were owned by Lamar Arkansas.  Admitted that an employee of Lamar Arkansas identified available billboards in Arkansas for Tom Hill.  Admitted that subsidiaries of Lamar Advertising Company can enter into agreements for billboard space owned by other subsidiaries.  Denied to the extent that the wording of this statement suggests that an account executive can execute a binding agreement for billboard space.

5.     On September 2, 2020 at 1:00 pm Eastern time, Jacqueline Basulto (of SeedX) had a telephone conference with Tom Hill (account executive of Lamar-Indiana). During this telephone conference, Jacqueline Basulto informed Tom Hill that the subject copy "will be pro-reproductive rights in nature and related to the religious practices of the Satanic Temple." Appx. 125 (Aff. Basulto), at ¶ 5. She also informed him that Lamar had worked with TST *in the past.* Appx. 33 (email from Basulto to Hill *re: Lamar Advertising* dated Sept. 2, 2020 at 10:58 pm Eastern).

RESPONSE: Admitted that Basulto and Hill had a telephone conference on or around 1:00 p.m. Eastern on September 2, 2020. Admitted that Basulto claims to have told Hill that TST wanted to post a billboard that was pro-reproductive rights in nature and related to the religious practices of The Satanic Temple. Admitted that Hill does not recall the substance of his conversation with Basulto. Denied that Hill understood during his subsequent communications with Basulto and work to identify and reserve billboards for TST that TST's final copy would be significantly different than the "Never be hit in school again" billboard that Basulto provided to Hill. *See* Defs.' Mot. (Doc. 47-1) at Ex. 10 (Hill obtaining approval for "Never be hit in school again" design), Ex. 11 (Hill forwarding "Never be hit in school again" design to Gibbens), & Ex. 14 (Hill explaining to Basulto that "Never be hit in school again" design was approved).

6. Tom Hill confirmed under oath that the September 2 telephone conversation took place, swore he could not recall the details of the conversation. Appx. 104-108 (Depo. Hill) at 6:16-8:5, 10:25-11:6, 14:14-15, and 29:8-13. Hill has no materials that would refresh his recollection as to the details of the conversation. Appx. 104 (id.), at 8:6-8:18.

RESPONSE: Admitted.

7. On September 9, 2020, Hill emailed Basulto that he was sending a contract for her to sign. Appx. 14 (Email from Hill to Basulto *Re: Proposal for SeedX* Sep. 9, 2020, 3:13 pm EDT).

RESPONSE: Admitted.

8. Basulto expressed concern that the artwork would not be ready by then and asked whether she should send samples for approval before signing the contract. Appx. 14 (Email from Basulto to Hill, *re: id.*, at 3:37 pm).

RESPONSE: Admitted.

9. Hill responded that the copy she had sent previously was approved. Appx 14 (Hill to Basulto, id., at 3:38 pm). The copy Basulto sent previously was for TST's past campaign, which Basulto had expressly stated in her previous email to Hill. Appx. 33 ("I am also attaching our *past* campaign with Lamar to show you what creative looked like in the *past*") (emphasis added).

RESPONSE: Admitted, except to the extent that the argumentative wording of paragraph 9 implies that Hill realized that TST planned to provide final copy that was significantly different than the "Never be hit in school billboard." *See* Defs.' Mot. (Doc. 47-1) at Ex. 10 (Hill obtaining approval for "Never be hit in school again" design), Ex. 11 (Hill forwarding "Never be hit in school again" design to Gibbens), & Ex. 14 (Hill explaining to Basulto that "Never be hit in school again" design was approved).

10. By September 11, 2020, Basulto had still not signed the contract. Appx. 15 (Email from Hill to Basulto, *re:*, id. Sept. 11 at 6:38 am). Hill asked Basulto to sign the contract. Id.

RESPONSE: Admitted.

11. Basulto responded that she had "no problem signing," but she was still waiting for the advertising copy from TST. Appx. 15 (email from Basulto to Hill, *re: id.*, Sept. 11, at 11:59 am).

RESPONSE: Admitted.

12. On September 14, Basulto signed the contract Lamar sent her. Appx. 18. The next day, a Lamar general manager executed the contract. Id. This contract is consistent with any other fully executed contract from another market. Appx. 111 (Depo. Gibbens), 7:3-10.

RESPONSE: Admitted that, on September 14, Basulto signed a contract (the "Contract") Hill sent her. Admitted that Jason Graham, the general manager of Lamar Indiana, signed the same contract the next day. Admitted that the contract was consistent with what Tom Gibbens of Lamar Arkansas would expect to see from another market.

13. Paragraph 5 of the Contract includes a condition whereby Lamar reserves the right to determine whether advertising copy is "in good taste and within the moral standards of the community." Appx. 19. The same paragraph allows Lamar to terminate the contract if it determines the advertising copy does not meet those standards. Id. The contract contains no other provisions allowing for termination. Id.

RESPONSE: Denied as stated. Admitted that, in paragraph 6 of the Contract, Lamar Indiana reserved the right to "determine if copy and design are in good taste and within the moral standards of the individual communities in which it is to be displayed" and "the right to reject or remove any copy either before or after installation, including immediate termination of this contract." Admitted that this is the provision under which Lamar Indiana cancelled the Contract. Denied that this is the only provision of the Contract that addresses termination. *See* Pl.'s Statement of Facts (Doc. 53-1) at App. 19.

14. Lamar's stated policy provides:

> Lamar Advertising supports the First Amendment rights of advertisers who want to use our medium to convey political, editorial, public service, and other noncommercial messages. Per policy, we do not accept or reject copy based on our agreement or disagreement with the views expressed.

Appx. 130 (Lamar Advertising Copy Acceptance Policy) (Revised as of July 2016). This policy was applicable at the time. Appx. 115 (Depo. Kilshaw), at 6:7-9. Its application requires Lamar to post Satanic messages on equal terms as Christian messages. Appx. 23 ("We run

5

thousands of church ads and have to post the occasional atheist, satanic, et. submissions we receive.").

RESPONSE: Denied as stated. Admitted that the Copy Acceptance Policy in place at the time of the events at issue in this lawsuit stated, in part:

> Lamar Advertising supports the First Amendment right of advertisers to promote legal products and services. We also advocate the use of our medium for political, editorial, public service and other noncommercial messages. . . . Lamar will not accept or reject copy based upon agreement or disagreement with the views presented.

See Pl.'s Statement of Facts (Doc. 53-1) at App. 19. Admitted that the defendants apply the same Lamar Copy Acceptance Policy and principles to ads from TST as they do to any other advertiser, including advertisers who seek to post a Christian message.

15.     Upon complete execution of the contract, Tom Gibbens (General Manager over Lamar-Arkansas) sent an internal email to Hal Kilshaw. Appx. 23 (Email from Gibbens to Kilshaw, *re: Lamar Advertising* Sep. 15, 2020, 9:38 am Eastern). There, Gibbens states that he has not seen the proposed ad copy but still asks for permission to unilaterally cancel the contract, sight-unseen. Id. ("I do not have the final artwork yet. Can we reject this based on not meeting the moral standards of our community?").

RESPONSE: Admitted that Tom Gibbens sent an email to Hal Kilshaw after the contract was executed by SeedX and Lamar Indiana asking if TST's "Never be hit in school again" copy could be rejected "based on not meeting the moral standards of our community." Admitted that Gibbens did not have "the final artwork" when he sent the email. Denied that Gibbens thought that the final artwork would be significantly different than the picture he had been provided. See Pl.'s Statement of Facts (Doc. 53-1) at Appx. 23 (Hill forwarding "Never

6

be hit in schools" billboard to Gibbens).  Denied that Gibbens wanted "to unilaterally cancel the contract, sight-unseen."

16.     Three minutes later, SeedX sent the proposed advertising copy to Lamar. Appx. 22 (Email from Basulto to Hill, *Re: Lamar Advertising* Sept. 15, 2020, 9:41 am Eastern).

RESPONSE:  Admitted that SeedX first sent draft creative related to the Satanic Abortion Ritual to Hill at approximately 9:41 a.m. on September 15, 2020.

17.     A little more than an hour later, Kilshaw emailed Jason Graham, (General Manager for Lamar-Indiana), "All of these are misleading and offensive so no on all of them." Appx. 24 (Email from Kilshaw to Graham *Re: Satanic Temple Creative* Sept. 15, 2020, 10:58 am Eastern).

RESPONSE:  Admitted.

18.     Kilshaw's basis for asserting that the proposed designs were "misleading" was rooted in the errant proposition of law that the Satanic Abortion Ritual "is criminal or suggests violating law." Appx. 116 (Depo. Kilshaw), at 17:21-18:2; see also id., at 41:1-3 ("I wouldn't have approved anything that implied or stated that it was okay to break the law in following the abortion ritual.").

RESPONSE:  Admitted that Kilshaw "wouldn't have approved anything that implied or stated that it was okay to break the law in following the abortion ritual."  Admitted that Lamar Advertising Company and its affiliates "don't provide as much leeway when [they] conclude that something is criminal or suggests violating the law" and that "that was the reason for the decision in this case." Pl.'s Statement of Facts (Doc. 53-1) at Appx. 116 (Depo. Kilshaw), 17:21-18:2.  Admitted that Kilshaw determined that TST's proposed designs were

7

misleading because "the copy would lead the reader to believe that if they accepted The Satanic Temple's view, they could violate state law." Id. at 17:16-20. Denied that Kilshaw reached an "errant proposition of law" or concluded that the Satanic Abortion Ritual "is criminal or suggests violating the law."

19. Kilshaw is not a First Amendment lawyer. Appx. 115 (id.), at 6:15-16. Kilshaw is not a lawyer at all. Id., at 6:17-18. Kilshaw is not familiar with the Arkansas, Indiana, or Federal Religious Freedom Restoration Acts. Appx. 116 (id.), at 18:10-16. Nor is Kilshaw familiar with the legal significance of *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). Appx. 120 (id.), at 33:22-34:15.

RESPONSE: Admitted that Kilshaw is not a lawyer and is not familiar with the legal arguments that TST has advanced in claiming a religious exemption from state abortion laws, including the Arkansas, Indiana, and federal Religious Freedom Restoration Acts and the United States Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

20. As support for the proposition that the designs were "misleading," Kilshaw volunteered his misimpression of the law that peyote was not "allowed by law," despite it being "part of the practice of religion[]." Appx. 120 (id.), at 32:15-17; but see, *e.g.*, 21 CFR § 1307.31; 42 USC § 1996a(b)(1).

RESPONSE: Admitted that Kilshaw testified that he "remember[ed] examples of things that were part of the practice of religions that weren't allowed by law, polygamy, peyote, human sacrifice, those sorts of things . . . ." Pl.'s Statement of Facts (Doc. 53-1) at Appx. 119, 32:13-20. Otherwise denied.

8

21.     Six days later, Lamar informed TST and SeedX that Lamar rejected TST's proposed ad copy. Appx. 31 (Email from Hill to Basulto, *re: Lamar Advertising,* Sept. 21, 2020, 10:33 am Eastern).

RESPONSE:  Admitted that Tom Hill of Lamar Indiana informed Jacqueline Basulto that TST's proposed designs were rejected on September 21, 2020.

22.     The next day, Hill asked whether SeedX would send new copy. Appx. 31 (Email from Hill to Basulto, *re: Lamar Advertising,* Sept. 22, 2020, 9:16 am Eastern).

RESPONSE: Admitted.

23.     In response, Basulto asked what was wrong with the proposed copy. Appx. 31 (Email from Basulto to Hill, *re: id.*, Sept. 22 at 11:54 am Eastern).

RESPONSE:  Admitted that Basulto asked "Is there anything specific about the messaging or imagery that we should focus on?"

24.     Hill told her that Lamar said it was misleading and offensive.  Appx. 31 (Email from Hill to Basulto, *re: id,* Sept. 22, 2020, 11:57 am Eastern).

RESPONSE:  Admitted that Hill told Basulto "I[t] was the content is misleading and offensive."

25.     Basulto asked for clarification as to what specifically the content was misleading and offensive. Appx. 31 (Email from Basulto to Hill, *re: id.*, Sept. 22, at 11:59 am Eastern).

RESPONSE: Admitted.

26.     Hill simply responded "All of the content." Appx. 31 (Email from Hill to Basulto, *re: id,* Sept. 22, 2020, at 12:01 pm Eastern).

RESPONSE: Admitted.

27. Basulto responded explaining that they cannot revise the designs without knowing the specific problems with the proposed copy. Appx. 31 (Email from Basulto to Hill, *re: id.*, Sept. 22, at 12:05 pm Eastern). Basulto further iterated that the proposed advertising copy was consistent with TST's religious beliefs and practices. Id.

RESPONSE: Admitted that Basulto responded, "In order to revise the designs, we need more specific information about what is misleading or offensive. The messaging and content is in line with the beliefs of the Satanic Temple and their religious beliefs, so we can't move forward without an understanding of what characteristics are specifically off-base."

28. Hill responded that he would see if he could get more details. Appx. 31 (Email from Hill to Basulto, *re: id,* Sept. 22, 2020, at 12:12 pm Eastern).

RESPONSE: Admitted.

29. On September 22, at 12:12 pm Eastern Time, Hill requested that Kilshaw provide the specific information necessary for TST to revise the designs. Appx. 28 (Email from Hill to Kilshaw *Re: Satanic Temple Creative* Sept. 22, 2020, 12:12 pm Eastern). Kilshaw never responded.

RESPONSE: Admitted that, on September 22, at on or around 1:12 pm Eastern Time, Hill forwarded Basulto's question to Kilshaw. Denied that Kilshaw never responded. *See* Defs.' Mot. (Doc. 47-1) at Ex. 20.

30. The next day, at 5:59 pm Eastern, TST sent Hill a demand letter and preservation notice that they could either provide feedback on TST's proposed advertising copy or TST would sue for breach of contract. Appx. 42 (email from Kezhaya to Hill, *re: TST v. Lamar Advertising Company -- demand letter and preservation notice*, Sept. 23 at 5:59 pm Eastern); Appx. 43 (the demand letter).

RESPONSE: Admitted that, at or around 5:59 pm Eastern, approximately 28 hours after Hill said he would try to get more details, TST sent Hill a demand letter and preservation notice. Admitted that the letter demanded that Lamar Advertising Company "put up billboards advertising TST's abortion ritual by September 28." Admitted that the letter stated that Lamar Advertising company could "provide meaningful feedback in a timely manner to permit corrections to the designs, or you can put up the designs that have been put forward." Admitted that the letter threatened a lawsuit.

31.     Lamar never informed TST or SeedX any specific problems with the proposed copy or what TST or SeedX could do to remedy the alleged problems. This was inconsistent with how Lamar treated rejected Christian messaging. Appx. 3 (providing specific information as to why the copy was rejected in a pro-life design); Appx. 6 (same). It is also inconsistent with the normal course of conduct in the advertising business. Appx. 126 (Aff. Basulto), ¶ 8.

RESPONSE: Admitted that the defendants did not provide additional feedback regarding the proposed designs beyond those outlined in the email correspondence between the parties. Otherwise denied. Ex. A, Kilshaw Dep. at 8:20-9:11; Ex. B, Basulto to Jarry (Nov. 5, 2020) (explaining that Clear Channel rejected two of TST's four billboards, including at least one rejected because it did not "meet community guidelines").

32.     The Indiana RFRA has been interpreted to exempt various religious plaintiffs from abortion restrictions. Appx. 61 (Indiana RFRA order). The text of Arkansas RFRA is substantively identical to the text of Indiana RFRA. Appx. 117 (Depo. Kilshaw), 22:25- 23:7; *compare* ACA § 16-123-401 *with* IC § 34-13-9-8.

RESPONSE: Admitted that, in December 2022, more than two years after the events that gave rise to this lawsuit, a Superior Court in Indiana granted certain non-Satanic plaintiffs

who raised claims under the Indiana RFRA a preliminary injunction against enforcement of an Indiana statute that bans abortions except in certain limited circumstances. Denied that the text of Ark. Code Ann. § 16-123-401 is substantively identical to the text of Ind. Code § 34-13-9-8, but admitted that the Arkansas and Indiana RFRAs have similarities.

        QUATTLEBAUM, GROOMS & TULL PLLC
        111 Center Street, Suite 1900
        Little Rock, Arkansas 72201
        Telephone: (501) 379-1700
        Facsimile: (501) 379-1701
        mshannon@qgtlaw.com
        sbolden@qgtlaw.com

By: /s/ Sarah Keith-Bolden
     Michael N. Shannon (92168)
     Sarah Keith-Bolden (2007235)

*Lamar Advantage GP Company, LLC, and*
*Lamar Advantage Holding Company*