IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**THE SATANIC TEMPLE, INC.**                                                                        **PLAINTIFF**

**V.**                           **CASE NO. 5:22-CV-5033-TLB**

**LAMAR ADVANTAGE GP COMPANY, LLC,**
**LAMAR ADVANTAGE HOLDING COMPANY, and**
**LAMAR ADVERTISING COMPANY**                          **DEFENDANTS**

### REPLY IN SUPPORT OF DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants, for their reply in support of statement of undisputed facts, state:

1. Since at least 2015, The Satanic Temple ("TST") has asserted that certain abortion restrictions imposed by state law conflict with Satanic religious beliefs. *See Mary Doe v. Parson*, 567 S.W.3d 625, 626 (Mo. 2019) (alleging that certain abortion-related requirements imposed by the State of Missouri conflicted with the Satanic religious belief that a fetus is not a person).

**Response**: Admitted.

**Defendants' Reply:** None required.

2. TST's challenges to Missouri's informed-consent law in state and federal court were unsuccessful. *See Judy Doe v. Parson*, 960 F.3d 1115, 1120 (8th Cir. 2020) (affirming dismissal of Satanist's claim for exemption from Missouri's informed-consent law); *Mary Doe v. Parson*, 567 S.W.3d at 632–33 (same); Mot. Ex. 2, Jarry Dep. at 25:21 to 26:12 and 29:24-30:14 (testifying that TST was involved in and funded Mary Doe and Judy Doe).

**Response**: Denied in part. The Missouri legislature dropped the requirement of reading religious literature following the litigation.

**Defendants' Reply:** This Court should deem this fact admitted. TST does not contest that the Court decisions cited affirmed the dismissal of the Satanists' claims.

3.      In the summer of 2020, TST developed the Satanic Abortion Ritual. Mot. Ex. 3, Press Kit for Religious Abortion Ritual.

**Response**: Admitted.

**Defendants' Reply:** None required.

4.      TST anticipated that the ritual would provide a new avenue for legal challenges to abortion restrictions. See Mot. Ex. 2, Jarry Dep. at 34:19-24 (acknowledging that a new avenue for legal challenges to abortion restrictions was "a happy consequence" of developing the Satanic Abortion Ritual).

**Response**: Admitted in part, but the argumentative implication is denied. See id. ("the primary motivation is to support the needs of our members.")

**Defendants' Reply:** The Court should deem this fact admitted.

5.      TST understood that, although it believed that "Satanists should be exempt from unnecessary abortion regulations," clinics would be "hesitant" to recognize an exemption. Mot. Ex. 3, Religious Abortion Ritual Press Kit, at SEEDX000069.

**Response**: Admitted.

**Defendants' Reply:** None required.

6.      In later litigation seeking to establish a religious exemption to Texas abortion requirements, TST conceded that it "did not fault" an abortion provider for refusing to grant a religious exemption, since, if the clinic did so, it "would incur sanctions." See Mot. Ex. 4, Compl. (Doc. 1) in Case No. 4:21-cv-00387 (S.D. Tex) at p. 11; Mot. Ex. 2, Jarry Dep. at 44:1-45:5 (confirming TST's position); *see also* Mot. Ex. 4 at p. 25 ("[P]lease know that TST and Ms. Doe both support the mission of Planned Parenthood and understand its obligation to adhere to applicable Texas law and regulations."); Mot. Ex. 2, Jarry Dep. at 46:7-25 (agreeing with this

statement).

**Response**: Admitted, although the argumentative wording is denied. Just because Texas's theocratic executive branch refuses to give equal application of Texas RFRA to Satanists does not change the plain meaning of the statute.

**Defendants' Reply:**  The Court should deem this fact admitted.

7. To date, TST is not aware of any clinic granting someone an exemption because of Satanic beliefs or participation in the Satanic Abortion Ritual. Mot. Ex. 1, TST Dep. at 12:20-13:11.

**Response**: Admitted, although the argumentative wording is denied. Clinics are staffed by clinicians, not unbiased judges.

**Defendants' Reply:**  The Court should deem this fact admitted.

8. To date, TST is not aware of any court finding that someone was exempt from an abortion requirement imposed by state law because of Satanic beliefs or participation in the Satanic Abortion Ritual. Mot. Ex. 1, TST Dep. at 13:12-22; Mot. Ex. 2, Jarry Dep. at 33:5-19.

**Response**: Denied. The belief that "life" does not begin at "conception" is adopted by Satanists just as well as the Pagans, Jews, Unitarians, and Episcopalians who benefitted from the preliminary injunction stated in ECF 53-1, at 62 *et seq.*

**Defendants' Reply:**  The Court should deem this fact admitted.  The order cited by TST was a preliminary injunction issued by a Superior Court in Indiana in December 2022 to certain non-Satanic plaintiffs.

9. Lamar Advertising Company ("LAC") and its subsidiaries prominently display the name "Lamar" on the bottom (usually in the center) of their billboard structures. Am. Compl. (Doc. 3) at ¶70. The name is visible at all times, whether advertising designs are displayed or not. *Id*.

**Response**: Admitted.

**Defendants' Reply:** None required.

10. It is standard for billboard companies to reserve the right to review and approve copy before posting it. Mot. Ex. 5, Lamar Copy Acceptance Policy & Mot. Ex. 8, Contract between SeedX and Lamar Indiana (reflecting the practice of LAC and its subsidiaries); Mot. Ex. 6, Emails between Basulto and Jarry (Nov. 5, 2020) (reflecting the copy review process of another billboard company, Clear Channel).

**Response**: Denied. No evidence of record supports the commonality of billboard company review rights.

**Defendants' Reply:** The evidence cited establishes that Lamar Advertising Company and its subsidiaries and Clear Channel reserve the right to review and approve copy.

11. As indirect subsidiaries of Lamar Advertising Company ("LAC"), Lamar Indiana and Lamar Arkansas follow the Lamar Copy Acceptance Policy. Mot. Ex. 5, Lamar Copy Acceptance Policy.

**Response**: Denied. The subsidiaries rejected TST's designs solely because they disagreed with the viewpoint contained. ECF 53-1, at 31 ("*All* of the content") (emphasis added).

**Defendants' Reply:** The Court should deem this fact admitted. TST does not contest that Lamar Indiana and Lamar Arkansas apply the Lamar Copy Acceptance Policy, only whether the policy was applied correctly to TST's proposed billboards.

12. Under this policy, LAC and its subsidiaries do not "accept or reject copy based upon agreement or disagreement with the views presented." *Id*.

**Response**: Admitted that the policy says this.

**Defendants' Reply:** None required.

13. The Lamar Copy Acceptance Policy provides:

> Lamar reserves the right to reject advertising copy for any reason, but rejects copy for the following specific reasons:
> - The copy is factually inaccurate, misleading, fraudulent or deceptive.
> - The copy is obscene, offensive or otherwise inconsistent with local community standards.
> - The copy promotes an illegal activity.
> - Advertisers who have a pattern of using provocative and critical copy to create negative impressions of other entities may be barred from posting copy.

**Response**: Admitted that the policy (which is not incorporated in the contract which bears a merger clause) says this.

**Defendants' Reply**: None required.

14. The Lamar Copy Acceptance Policy further provides:

> When a local General Manager questions whether copy should be accepted, he will forward the copy to his Regional Manager. If the Regional Manager decides the copy should be accepted, he communicates that decision to the General Manager. If the Regional Manager decides the copy is unacceptable or is unsure, he will further communicate with the Vice-President of Governmental Relations. All copy which a General or Regional Manager thinks should be rejected must be forwarded. If necessary, the Chief Executive Officer and General Counsel will be consulted as well. The decision rendered in this process will be final.

**Response**: Admitted that the policy (which is not incorporated in the contract which bears a merger clause) says this.

**Defendants' Reply**: None required.

15. Hal Kilshaw, the Vice-President of Governmental Relations, is "in charge of the co[py] acceptance policy . . . ." Mot. Ex. 7, Kilshaw Dep. at 5:17-18; see also Mot. Ex. 5, Lamar Copy Acceptance Policy.

**Response**: Admitted.

**Defendants' Reply**: None required.

16. Only Kilshaw may reject a proposed billboard design. Mot. Ex. 5.

**Response**: Admitted.

**Defendants' Reply**: None required.

17. The contract used by LAC's subsidiaries states:

> 6. Copy Acceptance: Lamar reserves the right to determine if copy and design are in good taste and within the moral standards of the individual communities in which it is to be displayed. Lamar reserves the right to reject or remove any copy either before or after installation, including immediate termination of this contract.

Mot. Ex. 7, Contract, at LADV000030.

**Response**: Admitted.

**Defendants' Reply**: None required.

18. After developing the Satanic Abortion Ritual, TST engaged a marketing firm called SeedX to publicize it. Am. Compl. (Doc 3), at ¶ 36.

**Response**: Admitted.

**Defendants' Reply**: None required.

19. SeedX contacted Tom Hill of Lamar Indiana about billboard space in Arkansas and Indiana. Mot. Ex. 9, Emails between Hill and SeedX (Aug. 24–Sept. 2, 2020).

**Response**: Admitted.

**Defendants' Reply**: None required.

20. A SeedX representative let Hill know that the potential advertiser was The Satanic Temple. *Id*.

**Response**: Admitted.

**Defendants' Reply**: None required.

21. She also sent him a picture of "our past campaign with Lamar to show you what creative looked like in the past." *Id*.

**Response**: Admitted.

**Defendants' Reply**: None required.

22. The picture displayed a billboard with The Satanic Temple's name, prominent Satanic Temple iconography (including a pentagram and horned goat), and the message "Never be hit in school again." *Id*.; *see also* Am. Compl. (Doc. 3) at ¶ 48.

6

**Response**: Admitted.

**Defendants' Reply:** None required.

23.     Hill forwarded the "Never be hit in school again" copy to his general manager for confirmation that it was approved content. Mot. Ex. 10, Emails between Hill, Graham, and Kilshaw (Sept. 8, 2020).

**Response**: Denied as stated. The email states: "I'm told *this* has run in other Lamar markets in the past. Can we confirm *this* is approved content?" (emphasis added). "This" applies generically to the entire design, not just the text "Never be hit in school again." In addition to that text, "this" includes TST's claim to a religious exemption against an otherwise-applicable law, and TST's religious iconography, and TST's name, and the assertion of religious rights.

**Defendants' Reply:** This Court should deem this fact admitted. TST does not contest that the billboard design attached as Exhibit 10 to defendants' motion for summary judgment (Doc. 47-1) at LADV000478 was forwarded by Hill to his general manager for confirmation that it was approved content. The design speaks for itself.

24.     That general manager forwarded it to Kilshaw, who approved it. *Id*. (stating that the "Never be hit in school again" billboard was "O.K. with required disclaimer").

**Response**: Denied as stated. The email states in full "O.K. with required disclaimer." What was "O.K. with required disclaimer" included TST's claim to a religious exemption against an otherwise-applicable law, and TST's religious iconography, and TST's name, and the assertion of religious rights.

**Defendants' Reply:** This Court should deem this fact admitted. TST does not contest that the billboard design attached as Exhibit 10 to defendants' motion for summary judgment (Doc. 47-1) at LADV000478 was forwarded by the general manager to Kilshaw, who approved it. The

design speaks for itself.

25. Later, employees of Lamar Arkansas also forwarded the "Never be hit in school again" billboard design to Kilshaw. Mot. Ex. 11, Emails between Gibbens and Kilshaw (Sept. 15, 2020).

**Response**: Denied. No part of the email references the "Never be hit in school" copy, only the name "the satanic temple."

**Defendants' Reply:** The email attached as Exhibit 11 to defendants' motion for summary judgment (Doc. 47-1) includes the "Never be hit in school" copy at LADV000182.

26. Kilshaw told Lamar Arkansas that it was approved. Id. (Kilshaw informing Lamar Arkansas that the "Never be hit in school again" copy was approved and should be posted).

**Response**: Denied. The email states in full: "I approved the copy on 9/8. We run thousands of church ads and have to post the occasional atheist, satanic, etc. submissions we receive." No part of this email references the "Never be hit in school again" copy, it relates solely to TST's religious viewpoint and Lamar's obligation to post material with that viewpoint on equal terms as it would post material from a Christian viewpoint.

**Defendants' Reply:** The email attached as Exhibit 11 to defendants' motion for summary judgment (Doc. 47-1) includes the "Never be hit in school" copy at LADV000182.

27. Lamar Arkansas employees prepared to implement that decision. Mot. Ex. 12, Gibbens to Cooper & Fulmer (Sept. 15, 2020) (Arkansas Territory Manager stating that "Never be hit in school again" billboard would be displayed and instructing personnel to forward any calls about the billboard to his voicemail); Mot. Ex. 13, Weeks to Neal, et al. (Sept. 15, 2020) (General Manager in Northwest Arkansas stating that TST ads would be running in the market).

**Response**: Denied. Exhibit 12 again relates back to Kilshaw's prior email that Satanists

are entitled to equal treatment as Christians. Exhibit 13 complains about the designs at issue.

**Defendants' Reply:** This Court should deem this fact admitted. TST does not contest the authenticity of the emails cited, which speak for themselves and demonstrate that employees of Lamar Arkansas prepared to implement Kilshaw's decision to approve the "Never be hit in school again" design.

28. SeedX was aware that Lamar Indiana had to approve the final billboard designs. Mot. Ex. 14, Emails between Basulto and Hill (Sept. 8–14, 2020).

**Response**: Admitted.

**Defendants' Reply:** None required.

29. SeedX encountered delays in getting final approved billboard designs to send to Lamar Indiana. Mot. Ex. 15, Emails between Hill and Basulto (Sept. 8–14, 2020) (outlining delays in getting TST's approval for copy).

**Response**: Denied. SeedX provided the designs in advance of September 18, which was timely under the contract. *See* ECF 53-1, at 19 ¶ 1.

**Defendants' Reply:** TST does not contest the content of Exhibit 15 to defendants' motion for summary judgment (Doc. 47-1), which outlines delays in getting final approval that required changing the timeline for the campaign.

30. On September 9, 2020, Jacqueline Basulto of SeedX told Hill, "I do not think the artwork will be finalized tomorrow… can we send the samples for approval first? What do you think?" Mot. Ex. 14, Emails between Basulto and Hill (Sept. 8–14, 2020) (emphasis added).

**Response**: Admitted.

**Defendants' Reply:** None required.

31. Hill responded, "The design you sent me last w[ee]k [the "Never be hit in school again" design] was approved[.]" *Id*.

**Response**: Admitted.

**Defendants' Reply:** None required.

32. Hill also asked Basulto if she "could sign the contract so we can get the locations locked in while we await creative approval." *Id*.

**Response**: Admitted.

**Defendants' Reply:** None required.

33. This allowed TST to ensure that the billboards would be available even though the proposed billboard designs were not yet complete. *See id*.

**Response**: Admitted. It also bound Lamar in contract to post designs advertising the Satanic Abortion Ritual for the dates specified on the billboards specified.

**Defendants' Reply:** None required. TST admitted this fact. This Court should disregard TST's legal argument.

34. The contract (the "Contract") reserved billboards at eight locations for TST between September 28, 2020, and October 25, 2020, at a total cost of $7,362 for printing and installation and $9,025 for billboard space. Mot. Ex. 8, Contract, at LADV000029.

**Response**: Admitted.

**Defendants' Reply:** None required.

35. The contract stated that Lamar Indiana "reserve[d] the right to determine if copy and design are in good taste and within the moral standards of the individual communities in which it is to be displayed" and "to reject or remove any copy either before or after installation, including immediate termination of this contract." Mot. Ex. 8, Contract at LADV000030.

**Response**: Admitted.

**Defendants' Reply:** None required.

36. At 9:41 AM on September 15, 2020, the day Lamar Indiana executed the Contract, SeedX provided Hill with a different set of designs for copy to be displayed. Mot. Ex. 8, Contract; Mot. Ex. 16, Emails between Hill and SeedX (Aug. 24 to Sept. 22, 2020) at LADV0000160–61.

**Response**: Denied. The "*past* design" for a "*past* campaign" which had nothing to do with a religious claim for pro-reproductive rights, was never suggested as one of the present designs for the present campaign.

**Defendants' Reply:** The Court should deem this fact admitted. TST does not contest that TST sent copy at 9:41 AM on September 15, 2020, that had not been previously provided to Lamar Indiana.

37. The new designs announced that "The Satanic Abortion Ritual permits First Trimester Abortions upon Demand." Mot. Ex. 17, Proposed Designs.

**Response**: Admitted.

**Defendants' Reply:** None required.

38. Ten minutes later, Hill noted that he would "have to get these approved on my end" since "the content is totally different than what we had originally approved." Mot. Ex. 18, Emails between Hill and Basulto (Aug. 28 to Sept. 15, 2020).

**Response**: Admitted; although this is proof of pretext.

**Defendants' Reply:** None required. This Court should disregard TST's legal argument.

39. The new designs were forwarded to Kilshaw for review. Mot. Ex. 19, Emails between Kilshaw and Graham (Sept. 15, 2020).

**Response**: Denied, these were designs for the present campaign, not "new" designs.

**Defendants' Reply:** The Court should deem this fact admitted. TST does not contest that the copy SeedX sent to Lamar Indiana at 9:41 AM on September 15, 2020, was forwarded to Kilshaw for review.

40. Kilshaw determined that the designs were misleading and offensive and rejected them. Mot. Ex. 7, Kilshaw Dep. at 17:16- 18:2, 31:2-5 ("To me, the copy would lead the reader to believe that if they accepted The Satanic Temple's view, they could violate state law. . . . It's - - so it's one of the areas we're very, very sensitive about and so we don't provide as much leeway when we think something is criminal or suggests violating law, so that was the reason for the decision in this case. . . . they were offensive because they were sending the message out to readers of the billboard that it's okay to violate the law if you agree with the [S]atanic ritual."); see also Mot. Ex. 20, Kilshaw to Graham (Sept. 22, 2020) (Kilshaw explaining that he rejected the advertisements because "[t]he right to have an abortion in the U.S. is provided under law, not the Satanic Temple's abortion ritual").

**Response**: Admitted that this is a statement of Kilshaw's uninformed legal opinion. Denied that this is an accurate statement of law. See Arkansas's Religious Freedom Restoration Act, encoded at ACA § 16-123-401 *et seq.* and Indiana's Religious Freedom Restoration Act, encoded at Ind. Code Ann. § 34-13-9-0.7 *et seq.* (each providing religious exemptions, even to generally applicable laws); *see also* U.S. Const. Amend. I (Free Speech and Free Exercise Clauses) and *e.g. Kennedy v. Bremerton School District*, 142 S.Ct. 2407 (2022) (recognizing the dual constitutional protections for religiously expressive activity–such as the Satanic Abortion Ritual).

**Defendants' Reply:** The Court should deem this fact admitted. TST does not contest that Kilshaw determined that the designs were misleading and offensive and rejected them.

41. Eventually, TST settled on designs that explicitly announced, "Our Religious Abortion Ritual Averts Many State Restrictions." Mot. Ex. 21, Basulto to Hill & Rashidi (Sept. 21, 2020); Mot. Ex. 22, Proposed Designs; Am. Compl. (Doc. 3) at 69.

**Response**: Admitted.

**Defendants' Reply:** None required.

42. The central purpose for TST of these billboards was to convey the message that Kilshaw determined to be misleading and offensive. Mot. Ex. 2, Jarry Dep. at 74:16-21 (explaining that the language "averts many state restrictions" was "central to the billboard, otherwise . . . it's not really conveying a whole lot").

**Response:** Denied. Kilshaw found "*All* of the content" to be "misleading and offensive." ECF 53-1, at 31. Including TST's religious iconography, name, and claim to equal entitlement to the plain text of Arkansas and Indiana RFRA. Admitted that the central purpose for TST was to convey that the plain text meaning of Arkansas and Indiana RFRA entitles TST's membership to "avert many state restrictions."

**Defendants' Reply:** The Court should deem this fact omitted. TST admits that the central purpose of the advertisements was to convey that the Religious Abortion Ritual "averts many state restrictions." Defendants further note that Kilshaw did not state "all of the content" was misleading and offensive.

43. Approximately two days after being informed that its proposed copy violated the Copy Acceptance Policy, TST sent a demand letter threatening a lawsuit. Mot. Ex. 23, Kezhaya to Hill (Sept. 23, 2020).

13

**Response**: Admitted.

44. **Defendants' Reply:** None required.

45. Lamar Indiana later cancelled the contract. Mot. Ex. 24, Hill to Baird and Gibbens (Sept. 25, 2020); Mot. Ex. 25, Hill to Basulto (Sept. 30, 2020).

**Response**: Denied. Lamar *breached* the contract. See ECF 53-1 (requiring Lamar "to display in good and workmanlike manner, and to maintain for the terms set forth above, outdoor advertising displays described above or on the attached list.")

**Defendants' Reply:** The Court should deem this fact admitted. TST does not contest the contents of Exhibit 24 and Exhibit 25 to defendant's motion for summary judgment (Doc. 47-1), which speak for themselves and state that Lamar Indiana was cancelling the Contract.

46. Lamar Indiana remained willing to accept other advertising copy from The Satanic Temple, including the "Never be hit in school again" advertisement. Mot. Ex. 16, Hill and Basulto 11 (Sept. 22, 2020) (Hill asking SeedX, "Can we not use the original design you'd sent?") & Mot. Ex. 25, Hill to Basulto (Sept. 30, 2020) (Hill offering to SeedX, after cancellation of the contract, to revisit the campaign "[i]f we get revised designs similar to the last ones").

**Response**: Denied. Otherwise, Lamar would have fulfilled its "pledge[] … to work with advertisers to achieve acceptable copy." ECF 53-1, at 130; see also ECF 59-1, at 4 (Depo. Kilshaw), at 9:5- 15 (Kilshaw works with advertisers "a majority of the time;" the only instance of record in the "rare" instance which he does not was with TST).

**Defendants' Reply:** The Court should deem this fact admitted. TST does not contest the contents of Exhibit 16 and Exhibit 25 to defendants' motion for summary judgment (Doc. 47-1), in which Hill asked if TST would post the "Never be hit in school again" billboard.

        Respectfully Submitted,

        QUATTLEBAUM, GROOMS & TULL PLLC
        111 Center Street, Suite 1900
        Little Rock, Arkansas 72201
        Telephone: (501) 379-1700
        Facsimile: (501) 379-1701
        mshannon@qgtlaw.com
        sbolden@qgtlaw.com

        By: /s/ Sarah Keith-Bolden
            Michael N. Shannon (92168)
            Sarah Keith-Bolden (2007235)

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on this 7th day of March, 2023, I filed the foregoing through the CM/ECF system, which shall send notice to all attorneys of record.

        /s/ Sarah Keith-Bolden