IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**THE SATANIC TEMPLE, INC.**                                                                                   **PLAINTIFF**

V.                              CASE NO. 5:22-CV-5033-TLB

**LAMAR ADVANTAGE GP COMPANY, LLC,**
**LAMAR ADVANTAGE HOLDING COMPANY, and**
**LAMAR ADVERTISING COMPANY**                                                   **DEFENDANTS**

### REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At all relevant times, defendants[1] were willing to post billboards that included Satanic religious beliefs and iconography. They concluded, however, that it was misleading and offensive for The Satanic Temple ("TST") to claim that participants in the Satanic Abortion Ritual are exempt from state abortion laws. TST has not pointed to evidence that creates a factual issue regarding whether any defendant discriminated against TST or breached the contract between Lamar Indiana and SeedX by applying the Lamar Copy Acceptance Policy to TST's proposed advertisements. Defendants are entitled to judgment as a matter of law.

**1.     Defendants Are Entitled To Summary Judgment On TST's Claim For Religious Discrimination Under The Arkansas Civil Rights Act.**

    **A.     TST Has Not Cited Evidence That Supports Discriminatory Intent.**

TST does not dispute that, to prevail on its claim under the Arkansas Civil Rights Act ("ACRA"), it must provide evidence of discriminatory intent. Nor does TST contest that Hal

---

[1] TST made Lamar Advertising Company ("LAC") a party after the deadline for dispositive motions. LAC respectfully requests that this Court allow it to join defendants' motion for summary judgment or, in the alternative, allow LAC to file its own motion for summary judgment.

Kilshaw objected to TST's Satanic Abortion Ritual billboards because they claimed an exemption from state law. Pl.'s Resp. to Stat't of Facts (Doc. 64) at 16–17. It cannot, because the undisputed evidence shows that defendants always stood ready to do business with TST and post advertisements that included Satanic beliefs and iconography. Mot. (Doc. 47) at Ex. 16 & 25.

Arguing that there is evidence of discriminatory intent, TST notes that Tom Hill, an employee of Lamar Indiana, stated that "all of the content" in TST's abortion ritual ads was misleading and offensive. TST urges this Court to conclude that, since the ads included Satanic iconography, this showed discriminatory intent. Hill communicated to TST's agent numerous times, however, that Lamar Indiana would post the "Never be hit in school again" ad, with its prominent Satanic message and iconography. *See* Mot. (Doc. 47) at Ex. 4, 16 & 25. His general statement about why the Satanic Abortion Ritual ads were rejected does nothing to undermine the undisputed evidence that defendants were always willing to post ads for TST.

TST also asserts that Hill knew in advance that the ads would be "controversial, religious, pro-reproductive rights, and from TST." Pl.'s Resp. (Doc. 65) at 4. There is no evidence, however, that Hill knew in advance that TST sought to advertise an exemption from state law. Nor does TST explain how Hill's knowledge is evidence of discriminatory intent.

Nor can TST create a fact issue by pointing to concerns employees of Lamar Arkansas may have had about TST's ads. Pl.'s Resp. (Doc. 65) at 4–5. TST does not point to evidence that these employees had a role in rejecting the ads. Instead, the undisputed evidence shows that only Kilshaw could reject copy and that Lamar Arkansas abided by his decisions. Mot. (Doc. 47) at Ex. 11 & 12. TST asks this Court to conclude that defendants discriminated against TST if a single employee felt apprehensive or embarrassed about posting a billboard for TST. Pl.'s Resp. (Doc. 65) at 4–5. The ACRA, however, governs actions, not feelings. Ark. Code Ann. § 16-123-106.

TST argues that defendants have posted controversial abortion-related ads in the past—sometimes after going back and forth to achieve acceptable copy—and therefore had to do so here. Pl.'s Resp. (Doc. 65) at 3, 5–6. TST even suggests that, since defendants are not a religious organization, they cannot apply editorial standards to copy that touches on religion. *See id*. at 6–7 (distinguishing *World Peace* decision because defendants are not a religious organization). TST does not, however, cite any authority to suggest that, because defendants accept controversial copy that meets their editorial standards, they must also accept controversial copy that is misleading and offensive. The purportedly similar ads TST cites, moreover, do not claim an exemption from state laws and are therefore very different from TST's copy. Pl.'s Statement (Doc. 53-1) at App. 3–7.

Kilshaw's undisputed testimony shows he rejected TST's copy because it claimed that participants in TST's ritual are exempt from state law. Defs.' Mot. (Doc. 47-1) at Ex. 7, 17:16–18:2, 31:2–5. LAC and its subsidiaries, he explained, are "very sensitive" to copy that suggests violating the law and provide little leeway for such copy. Defs.' Mot. (Doc. 47-1) at Ex. 7, 17:21-18:2. Kilshaw also testified that, although he works with advertisers who submit borderline copy to try to resolve objections, sometimes (as here) advertisers submit copy that cannot be fixed. Ex. 1. After all, TST claims that the sole purpose of SeedX's contract with Lamar Indiana was to "advertise TST's Satanic Abortion Ritual (and underlying claim to a religious exemption from abortion regulations)." Pl.'s Resp. (Doc. 65) at 17.

Even if TST had made a prima facie showing of discriminatory intent (it has not), there is no evidence to suggest that Kilshaw's explanation that he rejected TST's copy because it claimed an exemption from state law was a pretext for discrimination. *See Roark v. City of Hazen, Ark.*, 189 F.3d 758, 761 (8th Cir. 1999) (explaining that, under the *McDonnell Douglas* burden-shifting paradigm, once a 42 U.S.C. § 1981 plaintiff establishes a prima facie case of discrimination, the

3

burden shifts to defendant to provide a non-discriminatory reason for its action, then back to plaintiff to show the proffered reason is pretextual).[2]  Instead, there is ample evidence that TST's religious identity had no bearing on Kilshaw's actions. *See Lucke v. Solsvig*, 912 F.3d 1084, 1089 (8th Cir. 2019) (affirming summary judgment against plaintiff who did not discredit defendant's proffered non-discriminatory reason).  And, even if there were evidence that Kilshaw cut short the back-and-forth because of TST's religious identity (there is not), TST was not damaged, because the parties agree that it was impossible to achieve copy acceptable to both parties.

       **B.**    **Defendants' Have a First Amendment Right to Impose Editorial Standards on Religious Billboards.**

TST claims "Lamar contends that the Free Speech Clause entitles it to discriminate among religious notwithstanding the plain text of the ACRA." Pl.'s Resp. (Doc. 65) at 7.  That is not what defendants assert. Indeed, defendants were unquestionably willing to work with TST and to display ads that prominently included TST's name, iconography, and religious messaging.  This Court has no reason to decide whether defendants can constitutionally be required to do so.  The only question here is whether defendants can be forced to post ads that violate the Lamar Copy Acceptance Policy simply because they may touch on religious beliefs.

TST first argues that defendants waived their First Amendment rights by contracting with TST.  Pl.'s Resp. (Doc. 65) at 7.  But the Contract explicitly retained the right to review and approve copy.  Mot. (Doc. 47) at Ex. 7.  TST provides no authority or reasoning to support the idea that defendants could expand their obligations under the ACRA by signing a contract.

---

[2] *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 954, 69 S.W.3d 393, 401 ("[Arkansas] courts may look to state and federal decisions which interpret the federal civil rights laws as persuasive authority for interpretive guidance.").

TST next asserts that billboards are not speech. There is no serious question, however, that TST's proposed billboards meet the definition of "speech." Pl.'s Resp. (Doc. 65) at 9 (asserting that Free Speech rights attach where there is "intent to convey a particularized message of which the likelihood was great that the message would be understood by those who viewed it") (quotations omitted). Instead, TST apparently asserts that defendants waived their First Amendment rights by agreeing to post copy with a wide variety of viewpoints. It is true that defendants are happy to post billboards with a wide variety of viewpoints. They object, however, to associating the Lamar name with ads that are misleading, offensive, or otherwise violate the Lamar Copy Acceptance Policy. Mot. (Doc. 47) at Ex. 5. It is not TST's—nor this Court's—role to define for defendants what speech they should find objectionable.

TST also argues that messages on billboards are the speech of the individual advertisers, not defendants. Pl.'s Resp. (Doc. 65) at 12. The Supreme Court, however, has explicitly held that the government cannot "constitutionally require an individual to participate in the dissemination of an ideological message by displaying it on his private property in a manner and for the express purpose that it be observed and read by the public." *Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (holding that a statute that forbade obscuring the state motto on license plates unconstitutionally "requires [people to] use their private property as a 'mobile billboard' for the State's ideological message"). At any rate, it is inconsistent for TST to argue, on the one hand, that Lamar Indiana's contract was illusory because Lamar Indiana retained full editorial control over ads and, on the other, that defendants do not "speak" when they post billboards. *See Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 575 (1995) (recognizing that editorial control is a touchstone of First Amendment speech). Nor does *Turner Broadcasting System v. F.C.C.*, cited by TST, compel a different result. 512 U.S. 622 (1994). Among other distinctions, unlike

5

cable operators, who "[f]or the most part . . . do not review any of the material provided by cable networks," defendants review each proposed billboard for compliance with the Lamar Copy Acceptance Policy. *Id*. at 629 (quoting Brenner, Cable Television and the Freedom of Expression, 1988 Duke L.J. 329, 339). Also unlike *Turner*, here there is no governmental interest in exempting religious ads from editorial standards. *Id*.

**2.  Defendants Are Entitled To Summary Judgment On TST's Contract Claims.**

TST argues that the contract between Lamar Indiana and SeedX (the "Contract") is illusory and asks this Court to read into the Contract an implied warranty of good faith. Pl.'s Resp. (Doc. 65) at 16. This is unnecessary, because the Contract as written is not illusory and allowed TST to reserve billboard space while it finalized its proposed designs. *See* Defs.' Br. (Doc. 48) at 19.

Nor is there evidence that any defendant acted in bad faith. TST asserts that Kilshaw ignored a request for additional feedback on TST's designs for a day-and-a-half, longer than his typical response time. Pl.'s Resp. (Doc. 65) at 17. Even if this were a fair conclusion (it is not), it overlooks the feedback Kilshaw provided to Hill just a few minutes after Hill requested it. Defs.' Mot. (Doc. 47-1) at Ex. 20. While this information may not have been conveyed to SeedX by Hill in the short time before TST sent its demand letter, there is no evidence that the brief delay was motivated by "hatred, ill will or a spirit of revenge." *Conway Corp. v. Constr. Eng'rs, Inc.*, 300 Ark. 225, 231–32, 782 S.W.2d 36, 39 (1989) (defining bad faith).

TST next argues that defendants acted in bad faith because the spirit of the bargain between the parties required defendants to advertise TST's claim to a religious exemption. Pl.'s Resp. (Doc. 65) at 17. Nothing in the Contract or the parties' communications, however, supports the conclusion that any defendant was aware that TST sought to advertise an unproven alleged exemption from state laws. On the contrary, the Contract explicitly provides that Lamar Indiana

must approve TST's final copy. Mot. (Doc. 47) at Ex. 7. The correspondence between the parties, moreover, establishes that SeedX was aware both that Lamar Indiana had to approve the final copy and that Tom Hill expected the copy to be similar to the "Never be hit in school again" billboard. *Id*. at Ex. 14 & 15.

Nor is it evidence of bad faith that Lamar Indiana did not continue a back-and-forth with SeedX until acceptable copy was reached. Perhaps this assertion might have some weight if Lamar Indiana had rejected TST's proposed copy because of a minor design element that TST could have changed. Here, though, TST claims the only acceptable way for Lamar Indiana to fulfill the Contract was to advertise an exemption from state law. Pl.'s Resp. (Doc. 65) at 17. No amount of back and forth could have achieved mutually acceptable copy, and there is certainly no evidence that any defended acted in bad faith by declining to engage in further discussions.

TST also argues that its claim to a religious exemption is supported by law. *Id*. at 19–21. But that question is not before this Court. Even if TST's claim to a religious exemption were to be eventually recognized by a court, the fact remains that TST is not aware of any participant in the Satanic Abortion Ritual having received an exemption from a state abortion law either before Kilshaw's decision or in the two-and-a-half years since. Defs.' Mot. (Doc. 47-1) at Ex. 1, 12:20–13:22 & Ex. 2, 33:5-19. TST also cannot show that Kilshaw's concern about the claimed exemption constituted bad faith.

## CONCLUSION

TST has not met proof with proof and demonstrated that a factual exists for trial. The defendants are entitled to judgment as a matter of law.

7

Respectfully Submitted,

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
mshannon@qgtlaw.com
sbolden@qgtlaw.com

By: /s/ Sarah Keith-Bolden
     Michael N. Shannon (92168)
     Sarah Keith-Bolden (2007235)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on this 7th day of March, 2023, I filed the foregoing through the CM/ECF system, which shall send notice to all attorneys of record.

/s/ Sarah Keith-Bolden